791 F.2d 699
 55 USLW 2037
 J. Lawrence SEMAR and Sybil C. Semar,
Plaintiffs-Appellants/Cross-Appellees,
v.
PLATTE VALLEY FEDERAL SAVINGS & LOAN ASSOCIATION,
Defendant-Appellee/Cross- Appellant.
 Nos. 85-5619, 85-5654.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 5, 1986.
Decided June 6, 1986.
As Amended July 7, 1986.
 
 Dennis H. Doss, Doss & Cavett, Newport Beach, Cal., for plaintiffs-appellants/cross-appellees.
 John L. Fort and Ryan Hirota, Long Beach, Cal., for defendant-appellee/cross-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, FERGUSON, and NELSON, Circuit Judges.
 FERGUSON, Circuit Judge:
 
 
 1
 Plaintiffs J. Lawrence Semar and Sybil C. Semar appeal the district court's calculation of the amount they owe defendant Platte Valley Federal Savings & Loan Association under a Truth in Lending Act ("TILA") loan rescission. They argue that the district court erred by including interest and other loan charges. They also appeal the district court's calculation of attorney's fees awarded to them.
 
 
 2
 Defendant Platte Valley cross-appeals the district court's grant of rescission and award of attorney's fees. Platte Valley argues that a purely technical violation of TILA does not require rescission. The appeals are consolidated.
 
 
 3
 We affirm the district court's grant of rescission of the loan and award of attorney's fees. We modify the amount the Semars owe Platte Valley and the attorney's fees award. We remand for determination of who should bear reasonable sales costs from the 1985 sale of the property.
 
 I.
 
 4
 In 1982 the Semars sought a long-term loan to pay off a one-year second trust deed loan on their house. Before they began shopping for the loan, they asked Ali Malekzadeh for advice.[1] Malekzadeh cautioned against accepting a loan with a prepayment penalty clause, contacted lenders for them, and recommended United Financial Services ("United") as a potential lender.
 
 
 5
 On July 6, 1982 the Semars applied with United for a second trust deed loan on their house to replace the second trust deed loan coming due. United brokered the loan through defendant Platte Valley. On July 15 or 16, United told the Semars that Platte Valley insisted on a prepayment penalty clause. Though dissatisfied, the Semars signed the loan documents on July 16.[2]
 
 
 6
 TILA required that the documents state specifically the last date on which the Semars could rescind the loan agreement without penalty. 15 U.S.C. Sec. 1635(a);[3] 12 C.F.R. Sec. 226.23(b)(5).[4] TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. 15 U.S.C. Sec. 1635(a). TILA and its regulations, issued by the Federal Reserve System, 12 C.F.R. Secs. 226.1-.29 ("Reg Z"), require the lender to provide a form stating the specific date on which the three-day rescission period expires. 15 U.S.C. Sec. 1635(a); 12 C.F.R. Sec. 226.23(b)(5). If the lending institution omits the expiration date and fails to cure the omission by subsequently providing the information, the borrower may rescind the loan within three years after it was consummated. 15 U.S.C. Sec. 1635(f).[5]
 
 
 7
 Platte Valley's form omitted the expiration date,[6] although it stated that the rescission right expired three business days after July 16. Platte Valley concedes this technical violation of TILA. The Semars contend they were entitled to rescind the loan agreement for up to three years because of this violation.
 
 
 8
 The loan documents also contained a discrepancy of $1,274.75 between the total charges listed on the disclosure statement required by the Truth in Lending Act ("Disclosure Statement") ($10,079.27) and the total charges listed on the Closing Statement ($11,354.02). The Disclosure Statement listed the amount the Semars were told the loan charges would be; the Closing Statements listed the amount actually charged. The Semars contend they are entitled to rescind because of the discrepancy, which they claim is "material." The district court found the discrepancy not material.
 
 
 9
 The Semars made thirteen payments, totaling $26,655.33, but stopped making payments in September 1983. Platte Valley recorded a Notice of Default on January 23, 1984. The Semars sent a Notice of Rescission February 15, 1984. Platte Valley initiated foreclosure proceedings and on May 10, 1984 recorded a Notice of Sale for May 31, 1984.
 
 
 10
 On May 10, 1984, the Semars filed an action in federal district court for rescission under TILA. The district court preliminarily enjoined foreclosure on the Semars' house. The Semars filed for bankruptcy in October 1984, and the bankruptcy court ordered them to make monthly payments of $1,350.00 to Platte Valley. The Semars made two payments, totaling $2,700.00, by December 1984. They again defaulted. Thus, the total of the Semars' payments to Platte Valley was $29,355.33. Because the Semars could make no more payments, they agreed to the sale of their home. The district court dissolved its preliminary injunction, and the home was sold in early 1985 for $170,000.00. The district court placed the proceeds in an escrow account.
 
 
 11
 Before deciding whether rescission was proper, the district court asked the parties each to calculate the amount the Semars would owe Platte Valley if the court granted rescission. Under a TILA rescission, the security interest is dissolved, the lender returns the borrower's payments, and the borrower returns the loan proceeds, less any "finance or other charge." 15 U.S.C. Sec. 1635(b).[7]
 
 
 12
 The Semars suggested a formula of the loan amount ($134,000.00) less all payments made ($29,355.33) less the loan expenses ($11,354.02)[8] less the civil penalty the district court would award against Platte Valley for violating TILA ($1,000.00), or $92,290.65. Platte Valley suggested a formula of the principal due ($131,649.70) plus accrued interest at 16.875% ($16,291.62) plus late charges ($1,771.40) plus foreclosure expenses ($1,046.15), or $150,758.87. This amount also happens to be what the Semars would have owed if the district court had not granted rescission but instead accelerated the loan.
 
 
 13
 The district court granted rescission, and used a formula of $147,941.32,[9] plus prospective interest from March 1984 at 13%, less a loan fee ($4,170.00) less mortgage insurance premiums ($78.16) less escrow fees ($421.50) less the civil penalty ($1,000.00), or $142,271.66 plus interest. In addition, the district court ordered that Platte Valley be reimbursed the expenses of the 1985 sale of the property. We agree with the Semars that this ruling should be remanded for consideration of the reasonableness of the sale costs and who should bear the costs. The district court ruled that the Semars were entitled to what was left of the $170,000 after Platte Valley received the $142,271.66 plus interest and the expenses for the sale of the house. The district court also awarded attorney's fees to the Semars at $100 an hour, lower than the $135 an hour rate that the Semars requested. Platte Valley did not contest the hourly rate requested by the Semars.
 
 
 14
 The Semars timely appeal the district court's calculation of the amount they owe Platte Valley and the hourly rate for attorney's fees. Platte Valley timely cross-appeals the order granting rescission and the award of attorney's fees.[10]
 
 II.
 
 15
 The Semars allege two grounds for rescission: the technical TILA violation of omitting the expiration date of their rescission right, and the "material" discrepancy between the total charges listed on the Disclosure Statement and the Closing Statement.
 
 
 16
 We review de novo the grant of rescission because it is based on statutory interpretation. Southeast Alaska Conservation Council, Inc. v. Watson, 697 F.2d 1305, 1309 (9th Cir.1983). We agree with the district court that the TILA violation entitled the Semars to rescission. We do not reach the issue of whether the discrepancy was sufficiently "material" to constitute another ground for rescission.
 
 
 17
 TILA and Reg Z contain detailed disclosure requirements for consumer loans.[11] A lender's violation of TILA allows the borrower to rescind a consumer loan secured by the borrower's primary dwelling. 15 U.S.C. Sec. 1635(a). Technical or minor violations of TILA or Reg Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind. "To insure that the consumer is protected ... [TILA and Reg Z must] be absolutely complied with and strictly enforced." Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir.1983) (holding that technical violation, even if merely a "minor variation in language and type size" from TILA requirements, imposes liability); see also Huff v. Stewart-Gwinn Furniture Co., 713 F.2d 67, 69 (4th Cir.1983) (minor violations of TILA and Reg Z impose liability even if, as creditor alleged, consumer "was not misled and was given a meaningful and correct disclosure of crucial credit terms").
 
 
 18
 Reg Z "makes clear that failure to fill in the expiration date of the rescission form is a violation of the TILA." Williamson v. Lafferty, 698 F.2d 767, 768-69 (5th Cir.1983).[12] Williamson held that the omission of the expiration date, though a purely technical violation of TILA, entitled the plaintiff to rescind the loan agreement for up to three years, without regard to whether the omission was material. Id. at 768; see also Aquino v. Public Finance Consumer Discount Co., 606 F.Supp. 504, 507 (E.D.Pa.1985) (omission of expiration date of rescission right gives borrower right to rescind loan).
 
 
 19
 The Semars argue that Williamson supports their right to rescind the loan for up to three years after it was consummated. Platte Valley concedes the technical violation of TILA, but urges this court to distinguish cases like Williamson, because of their more sympathetic facts,[13] and to establish equitable discretion to vary the terms of TILA for borrowers less in need of protection.
 
 
 20
 The district court found the Semars to be unsympathetic plaintiffs. Nevertheless, it held that rescission was appropriate for the technical violation of TILA and its regulations. It correctly concluded that case law was contrary to Platte Valley's assertion that courts should assert equitable powers in cases with unsympathetic facts.
 
 
 21
 One reason courts reject imposing these equitable considerations on TILA is that the statute contains these considerations as defenses. Platte Valley overstates the potential harshness of requiring strict compliance with TILA and its regulations. 15 U.S.C. Sec. 1640(c) provides a good-faith defense for creditors:
 
 
 22
 A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.
 
 
 23
 Platte Valley did not raise this defense, presumably because of the testimony that its subsidiary was aware of the defect and failed to cure it.
 
 
 24
 In addition, accepting Platte Valley's suggestion would frustrate the very purpose of TILA. Congress did not intend for TILA to apply only to sympathetic consumers; Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions. As the Semars point out, most TILA plaintiffs are not "model borrowers." The district court correctly rejected Platte Valley's suggestion of carving a wide exception to TILA's detailed provisions.
 
 III.
 
 25
 We also hold that the district court erred in calculating the amount the Semars owe by making them liable for some "finance or other charge[s]" in contravention of 15 U.S.C. Sec. 1635(b). The formula suggested by the Semars, resulting in a liability to them of $92,290.65, is the correct one under TILA. We therefore modify the district court's judgment. Of the $170,000 proceeds from the sale of the Semars' home, Platte Valley will receive $92,290.65 less the attorney's fees award, and the Semars will receive the remainder, once the district court determines the issue of the 1985 sales costs.
 
 
 26
 On rescission, the security interest is dissolved and the borrower returns "the property"--in this case the loan proceeds--to the lender. 15 U.S.C. Sec. 1635(b). TILA specifically states that the borrower "is not liable for any finance or other charge." Id. Interest is a finance charge. 15 U.S.C. Sec. 1605(a);[14] see Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935, 938 (9th Cir.1975) (district court subtracted from amount borrower owed lender under a TILA rescission "finance charge" that included 10% interest, commissions, and "extra payment"); 12 C.F.R. Sec. 226.4(b)(1). The district court erred by making the Semars responsible for interest and many of the charges listed on the Closing Statement. The proper formula under the statute is the one suggested by the Semars: the loan amount less all charges in the loan agreement. Therefore, they owe Platte Valley $92,290.65.
 
 
 27
 Platte Valley concedes that the Semars' formula is correct under TILA but argues that the district court has equitable discretion to alter the statute. Platte Valley cites Rachbach v. Cogswell, 547 F.2d 502 (10th Cir.1976), which held that the district court did not abuse its discretion by requiring the borrower to repay principal and interest in a TILA rescission.[15] However, this decision contravenes 15 U.S.C. Sec. 1635(b), which states that a borrower is not liable for any finance charge, and 15 U.S.C. Sec. 1605(a), which lists interest as an example of a finance charge. We defer to Congress' method of enforcing TILA and follow the plain language of the statutes.
 
 
 28
 The district court's calculation contravened TILA by requiring the Semars to repay interest and other charges. Thus, we modify the amount the Semars owe Platte Valley to $92,290.65.
 
 IV.
 
 29
 The Semars argue that the district court abused its discretion[16] in awarding the attorney's fees at a rate lower than that the Semars requested. Because the Semars submitted ample evidence that $135 an hour was a prevailing rate for this type of litigation, we modify the award to reflect a $135 an hour rate.
 
 
 30
 Creditors are liable for "a reasonable attorney's fee as determined by the court" when borrowers obtain rescission under TILA. 15 U.S.C. Sec. 1640(a)(3). The district court must base its calculation of a reasonable attorney's fee in a TILA case on factors established in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974), and repeated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).[17] Martinez v. Idaho First National Bank, 755 F.2d 1376, 1378 (9th Cir.1985). "The failure to follow these guidelines constitutes an abuse of discretion." Id. (citing Laborers Clean-Up Contract Administration Trust Fund v. Uriarte Clean-Up Service, 736 F.2d 516, 525 (9th Cir.1984)).
 
 
 31
 Two of the factors, "the customary fee" and "awards in similar cases," relate to prevailing rates in similar litigation. The Eleventh Circuit reversed an award of $60 an hour, based solely on rates "customarily charged for Truth-in-Lending cases in the northern district of Georgia," as being too low. Varner v. Century Finance Co., 738 F.2d 1143, 1148 (11th Cir.1984) (rates in TILA cases must be based on "customary fees in cases of like difficulty," not just other TILA cases).
 
 
 32
 We find that $135 an hour was reasonable and reflects prevailing rates in similar litigation. The Semars presented evidence to the district court that their counsel was granted this rate in a TILA case a year earlier. They also submitted a bankruptcy court decision finding that the prevailing rate for "minimally experienced" bankruptcy attorneys was $125 an hour.
 
 
 33
 The district court found the number of hours expended, 153.95, to be reasonable, and Platte Valley does not contest this finding. We therefore modify the award from 153.95 hours at $100, or $15,395, to 153.95 hours at $135, or $20,783.25.
 
 V.
 
 34
 The district court's grant of rescission is affirmed in part, modified in part, and remanded. The amount the Semars owe Platte Valley and the attorney's fees award are modified. From the $170,000 proceeds from the sale of the house, Platte Valley is entitled to $71,507.40 ($92,290.65 owed by the Semars less $20,783.25 attorney's fees) and the Semars are entitled to the remaining $98,492.60. These figures may change once the district court resolves the 1985 sales costs issue.
 
 
 35
 Affirmed in part, modified in part, and remanded for the purpose of deciding the 1985 sales costs issue and entering judgment in accordance with this opinion.
 
 
 36
 Plaintiffs are awarded costs in full.
 
 
 37
 APPENDIX
 Closing Statement
 -----------------
Loan Origination Fee $ 4,170.00
Broker Fee 4,470.00
Lender's Document Preparation Fee 40.00
Trustee Fee 40.00
Prepaid Interest 753.72
Hazard Insurance premiums 473.00
PMI Premium 402.00
Mortgage Insurance premium 67.00
Closing Fee 301.00
Notary Fees 16.00
Loan Tie-in Fee 50.00
Data Processing Fee 20.00
Handling Lender's Statements-Payoff 15.00
Title Insurance 438.80
Sub-Escrow Fee 30.00
Recording Fee 12.00
Messenger Fee 5.50
 ------------
 $11,354.02 *
 ------------
 
 
 
 *
 The Closing Statement lists $11,354.02 as the total of these figures and
 the parties treat it as correct. The correct total is actually $11,304.02.
 For convenience, however, we also use the $11,354.02 figure in our opinion.
 
 
 [1]
 The Semars describe themselves as unsophisticated borrowers and Malekzadeh as "a friend who was also a part-time real estate broker." Platte Valley characterizes them as sophisticated borrowers, and says Malekzadeh was a real estate licensee giving advice to the Semars as clients. Platte Valley uses this characterization to argue that the Semars do not deserve the benefits of TILA
 
 
 [2]
 The amount of the fifteen-year loan was $134,000.00, at an annual interest rate of 16.875%. Of the proceeds, $109,144.98 went to pay off the one-year loan, $11,354.02 went to the loan's "Settlement Charges," and $13,501.00 went to the Semars
 
 
 [3]
 15 U.S.C. Sec. 1635(a) provides:
 Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.
 
 
 [4]
 12 C.F.R. Sec. 226.23 provides:
 (b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
 ....
 (5) The date the rescission period expires.
 
 
 [5]
 15 U.S.C. Sec. 1635(f) provides:
 An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.
 
 
 [6]
 Cartel Financial Services, a subsidiary of Platte Valley, prepared the loan documents. A Cartel employee testified that she noticed the space on the form for the expiration date was blank and informed her supervisor of the omission, but that Cartel did not cure the defect. Platte Valley does not raise a good-faith defense based on an unnoticed clerical error, see 15 U.S.C. Sec. 1640(c) (lender not liable for TILA violation if it shows "that the violation was not intentional and resulted from a bona fide error ... [such as a] clerical ... error[ ]")
 
 
 [7]
 15 U.S.C. Sec. 1635(b) provides:
 When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.
 
 
 [8]
 The loan expenses from the Closing Statement are reproduced at the end of this opinion as an appendix
 
 
 [9]
 The district court did not explain how it arrived at this beginning figure. However, the figure is merely Platte Valley's suggested figure less the late charges and foreclosure expenses:
 $150,758.87 (Platte Valley's figure)
 - 1,771.40 (late charges)
 - 1,046.15 (foreclosure expenses)
------------
 $147,941.32
 
 
 [10]
 Because attorney's fees are mandatory if the Semars prevail on the rescission issue and precluded if Platte Valley prevails, see 15 U.S.C. Sec. 1640(a)(3), Platte Valley does not treat the award of attorney's fees as a separate issue on appeal
 
 
 [11]
 Platte Valley argues TILA does not cover the loan because Mr. Semar stated that "[t]he additional money from my loan is to be used for back up business capital." TILA applies only to loans primarily for personal use. 15 U.S.C. Sec. 1635(a). The district court's finding that these loan proceeds were primarily for personal use is not clearly erroneous. The primary purpose of the loan was to pay off the one-year loan; the proceeds intended for business use (the proceeds left after the one-year loan and the loan charges were paid off, or $13,501.00) constituted only ten percent of the loan
 Congress overhauled TILA in 1980, effective October 1982. The Federal Reserve System amended Reg Z in 1981 to reflect the changes. In July 1982, Platte Valley could choose between complying with the former or the revised provisions. See Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 66 & n. 1 (4th Cir.1983). Because the current TILA and Reg Z provisions at issue here are "essentially identical" to the former versions, the district court's analysis used the current provisions for convenience.
 
 
 [12]
 Several years earlier, the Fifth Circuit found that, despite two minor defects in consumer loan documents, the lender was not liable under TILA. Dixon v. D.H. Holmes Co., 566 F.2d 571 (5th Cir.1978). Dixon is of little help, however. First, the technical violations were different: a term that should have been "unpaid balance of the cash price" was only "unpaid balance," and specific consequences of partial prepayment were omitted. Further, Williamson was decided later and is on point
 Some courts have indicated they might be unwilling to impose liability for technical violations, but the opinions are cautious and limited. See, e.g., Krenisky v. Rollins Protective Services Co., 728 F.2d 64, 67-68 (2d Cir.1984) ("We need not consider whether departure from strict compliance with the regulations would be permissible when a violation is both de minimus and of benefit to the consumer.") (citing Dixon; Kramer v. Marine Midland Bank, 559 F.Supp. 273 (S.D.N.Y.1983)).
 
 
 [13]
 Williamson involved a divorced forty-three year old mother of seven children. She signed an agreement with a contractor to add a carport to her home and to extend one of her rooms. The contractor financed the arrangements, and used her home as security without telling her. 698 F.2d at 768
 
 
 [14]
 15 U.S.C. Sec. 1605(a) provides:
 Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction. Examples of charges which are included in the finance charge include any of the following types of charges which are applicable:
 (1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.
 (2) Service or carrying charge.
 (3) Loan fee, finder's fee, or similar charge.
 (4) Fee for an investigation or credit report.
 (5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss.
 
 
 [15]
 Platte Valley cites other cases, but they hold only that courts have equitable discretion to alter the rescission procedures. See, e.g., Palmer v. Wilson, 502 F.2d 860 (9th Cir.1974) (where danger that creditor might not be reimbursed by following procedures in TILA, district court has discretion to alter procedures). These cases support the district court's allowing Platte Valley to take what it is owed from the proceeds of the house sale before the Semars receive their share of the sale proceeds. The procedures are not at issue, however. In addition, the district court need not rely on equitable powers to alter the procedure. In 1980 Congress amended 15 U.S.C. Sec. 1635(b) to give courts this authority statutorily. Depository Institutions Deregulation and Monetary Act of 1980, Pub.L. No. 96-221, tit. VI, Sec. 612(a)(4), 94 Stat. 132, 175 (codified at 15 U.S.C. Sec. 1635(b)) ("The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.") The cases do not give courts equitable discretion to alter TILA's substantive provisions and are therefore irrelevant
 
 
 [16]
 We review the amount of attorney's fees awarded for abuse of discretion. Martinez v. Idaho First National Bank, 755 F.2d 1376, 1378 (9th Cir.1985)
 
 
 [17]
 The factors are the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases. Kerr, 526 F.2d at 70