**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VICTOR BALDERAS and BELEN
BALDERAS,
          *Plaintiffs-Appellants,*

                    v.

COUNTRYWIDE BANK, N.A., a
National Banking Association;
AAA FUNDING, INC., DBA First
USA Funding, a California
corporation; COUNTRYWIDE HOME
LOANS, INC., DBA America's
Wholesale Lender, a New York
corporation; MOR CAZAKOV, an
individual; GALENA KOROL, an
individual; DOES 1 through 10,
inclusive,
          *Defendants-Appellees.*

No. 10-55064

D.C. No.
3:09-cv-00564-
MMA-JMA

**OPINION**

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
June 9, 2011—Pasadena, California

Filed December 29, 2011

21507

Before: Alex Kozinski, Chief Judge, Sandra S. Ikuta,
Circuit Judge and Lawrence L. Piersol,
Senior District Judge.*

Opinion by Chief Judge Kozinski;
Concurrence by Judge Ikuta

---

*The Honorable Lawrence L. Piersol, Senior District Judge for the U.S.
District Court for South Dakota, sitting by designation.

---

**COUNSEL**

Kevin J. Griffin (argued), Griffith Johnson, LLP, Dana Point, California; Nathan J. Sheridan and Dayna C. Carter, Goodman, Sheridan & Roff, LLP, Lake Forest, California, for appellant Victor Balderas, et al.

Stuart W. Price, Aaron M. McKown and Paula L. Zecchini (argued), Bryan Cave LLP, Irvine, California, for appellee Countrywide Bank, et al.

---

**OPINION**

KOZINSKI, Chief Judge:

The Balderases allege that they are immigrants who were rooked by a bank that signed them up for loans it knew they couldn't afford, on terms they didn't agree to. These are the facts as recited in the complaint: Mor Cazakov, a mortgage broker, cold-called the Balderases, representing that he could refinance their home, switch them to a fixed rate mortgage and let them cash out $50,000, all without a penalty. Subsequently, Soraya Qassim, a "duly authorized agent" of Countrywide Bank (Countrywide), filled out a uniform residential

loan application (URLA) for them and showed up unannounced at their home, urging the Balderases to sign it. But the form was in English, which they can't read, and it overestimated their income by over $40,000 per year. Qassim told them it was an informal document the bank needed, so the Balderases signed.

Three days later, on the evening of Monday, September 25, 2006, Cazakov showed up at their home with a notary public and loan documents also written in English. He told them that Countrywide "demanded" their signatures "that night" and he couldn't and wouldn't leave without getting them. The Balderases protested and asked to arrange the loan signing when their English-literate daughter could attend. But Cazakov said that Countrywide had instructed him to stay until he got the signatures, and he "engaged in a series of actions designed to intimidate, harass, and pressure [the Balderases] into signing the loan documents." After six hours of unrelenting pressure by Cazakov and several unsuccessful attempts to read the paperwork, the Balderases capitulated and signed the documents just after midnight. On Wednesday, they called Cazakov and asked him to rescind the loans. He refused. They then called Countrywide a day later seeking the same relief. Countrywide also refused, falsely representing it was too late. In fact, the three-day statutory rescission period extended through the next day, Friday, September 29.

The Balderases filed a complaint alleging, among other things, a violation of the Truth In Lending Act (TILA). *See* 15 U.S.C. §§ 1601 *et seq*. Countrywide filed a 12(b)(6) motion, which the district court granted. This timely appeal followed.

* * *

**[1]** The TILA is a federal consumer protection statute designed to promote "the informed use of credit" and assure "meaningful disclosure of credit terms to consumers." *Ford*

*Motor Credit Co.* v. *Milhollin*, 444 U.S. 555, 559 (1980) (quoting 15 U.S.C. § 1601(a)) (internal quotation marks omitted). Under the "borrower's remorse" provision, consumers can rescind a loan up to three business days after the loan transaction. *See* 15 U.S.C. § 1635(a). But this right is extended up to three years "[i]f the required notice or material disclosures are not delivered." 12 C.F.R. § 226.23(a)(3); *see also* 15 U.S.C. § 1635(f).

**[2]** The Balderases claim they were given defective copies of the Notice of Right to Cancel. The disclosures they received were missing material provisions, in particular the date of closing and the date on which the right to rescind expired. When, as here, the notice is given in writing, rather than in electronic form, Regulation Z instructs creditors to "deliver two copies of the notice of the right to rescind to each consumer entitled to rescind," and those copies must include "[t]he date the rescission period expires." 12 C.F.R. § 226.23(b)(1). The disclosures must be set forth "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1).

The Balderases' experience illustrates why lenders must allow borrowers to keep fully completed and accurate copies of the disclosure notices. Without this information, borrowers are left to guess when their right to rescind the loan transaction expires. Did the clock start ticking the day the Balderases signed the URLA? When they signed the loan documents? When Cazakov submitted the paperwork to Countrywide for processing? When Countrywide *actually* processed the paperwork? To add to the confusion, the Balderases claim that Cazakov falsely promised not to submit their paperwork to Countrywide "for a few days" in case they decided "not to proceed with the loan after their daughter had reviewed the contents." And, when the Balderases tried to exercise their right to rescind, Cazakov and Countrywide told them, incorrectly, that it was too late, instead of telling them, correctly,

that their rescission notice was timely but had to be submitted in writing.

**[3]** If the Balderases can prove that they were not allowed to keep two completed and accurate copies of the disclosure notice, the bank will have forfeited the benefit of the three-day cooling off period and the Balderases would have three years to rescind. *See Semar* v. *Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 701-02 (9th Cir. 1986) ("If the lending institution omits the expiration date . . . the borrower may rescind the loan within three years after it was consummated."). We need not consider whether the false statements as to the expiration of the rescission period allegedly made by phone when the Balderases tried to rescind orally operated as a separate waiver of the three-day rescission period.

**[4]** The district court erroneously held that the Balderases were entitled only to a three-day rescission period because they had, in fact, gotten a rescission notice that complied with the statutory requirements. In reaching this conclusion, the district court relied on Exhibit 14 to the complaint. Exhibit 14 is the rejection letter Countrywide sent in response to the Balderases' written rescission demand. The Balderases attached the letter to their complaint, an important object lesson as to why it's unwise to use a complaint as an ersatz document production. Attached to the rejection letter is a properly completed Notice of Right to Cancel bearing the Balderases' signatures. Immediately above the signatures is a statement to the effect that the borrower "acknowledge[s] receipt of two copies of *NOTICE of RIGHT TO CANCEL*." Countrywide's rejection letter points out that the Balderases acknowledged they had received proper notice, which meant the period to rescind was only three days.

**[5]** The district court agreed, concluding that the signed copy of the notice included in the bank's rejection letter, which the Balderases themselves let slip into the record by attaching it to their complaint, was "prima facie proof of

delivery." *Balderas* v. *Countrywide Bank, N.A.*, No. 09cv564-MMA(JMA), 2009 WL 4783142, at *4 (quoting *Garza* v. *Am. Home Mortg.*, 2009 U.S. Dist. LEXIS 40518, 2009 WL 1139594, at *3 (E.D. Cal. April 28, 2009). But Exhibit 14 only proved that the Balderases signed the document in Countrywide's possession. The acknowledgment created a rebuttable presumption that the required disclosures were delivered to the borrowers. *See* 15 U.S.C. § 1635(c). This presumption will no doubt be very valuable to Countrywide when the trier of fact is called on to decide whether the Balderases did or did not get proper TILA notice. But evidentiary presumptions "are inappropriate for evaluation at the pleadings stage." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (Supp. 2011). The Balderases allege in their complaint that they did not, in fact, get a properly prepared notice. If they testify to that effect at trial, the trier of fact could believe them, despite their signed statement to the contrary.

**[6]** Countrywide also seems to argue that the Balderases' signature on the disclosure statement proves conclusively that it was delivered to them. After all, they must have had it in their possession when they signed it. But providing someone a document long enough to sign it does not comply with 12 C.F.R. § 226.23(b)(1), which requires the lender to "deliver" copies of the Notice of the Right to Rescind to the consumer. Such momentary delivery defies both the purposes of the TILA and common sense. The revered second edition of *Webster's New International Dictionary* defines "deliver" as "to give or transfer" and "to yield possession or control of." *Webster's New International Dictionary* 693 (2d ed. 1939). We interpret "deliver" to mean that the consumer must be allowed to keep the notice. When you have pizza delivered, you don't sign for it and let the deliveryman take it back to the restaurant. And when a newspaper boy delivers a paper, he doesn't show you the headlines and then return it to the printer.

**[7]** Delivery under the TILA requires a permanent physical transfer from one party to another. The Balderases claim that

didn't happen here. Instead, they were given documents to sign and those documents were then taken away. All they were left with were incomplete documents that didn't tell them how long they had before they could renege on the loans. That missing information turned out to be critical when the Balderases told Countrywide they wanted out and were falsely told it was too late.

**[8]** Reading the complaint fully and fairly, as we must in a motion to dismiss, the Balderases claim that they received documents at the loan signing that didn't comply with TILA. If Countrywide ended up with the only copies of the properly filled out documents then Countrywide didn't comply with TILA because it never "deliver[ed] two copies of the notice of the right to rescind." 12 C.F.R. § 226.23(b)(1).

Countrywide claims that the Balderases didn't allege enough facts to rebut the signed notice's presumption of delivery. But presumptions are not rebutted by allegations; they are rebutted by evidence. And the time for presenting evidence has not yet arrived. Complaints need only allege facts with sufficient specificity to notify defendants of plaintiffs' claims. Here, the Balderases pleaded that the notice they were given was defective, and "on or about March 23, 2009," Countrywide sent a letter rejecting their rescission demand. That March 23, 2009 letter included the TILA-compliant notice. At trial, plaintiffs can prove up the allegations. *See Cooper* v. *First Gov't Mortg. & Investors Corp.*, 238 F. Supp. 2d 50, 64-65 (D.D.C. 2002). The trier of fact must then decide whether the evidence is specific and believable enough to rebut the statutory presumption. *See, e.g. Williams* v. *First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 751 (D.C. Cir. 2000) (trial testimony didn't rebut a presumption of delivery because it was inconsistent with deposition testimony); *Rowland* v. *Novus Financial Corp.*, 949 F. Supp. 1447, 1459-60 (D. Haw. 1996) (denying a motion for summary judgment because conflicting copies of the Notice of Right to Cancel created a triable issue of fact).

Countrywide relies on *Anderson* v. *Countrywide Financial*, No. 2:08-cv-01220-GEB-GGH, 2009 WL 3368444 (E.D. Cal. Oct. 16, 2009), for support. In *Anderson*, the plaintiff alleged that the "incorrect" notices she received from her lender and included in her complaint rebutted the signed notices attached to the lender's written correspondence that was included in her complaint. *Id.* at *2-3. The court stated that an "allegation [wa]s insufficient to rebut [TILA's] presumption." *Id.* at *3. *Anderson* erred and the district court here was wrong to follow suit.

But even if it turns out that the Balderases were left two copies of the completed form, as per Exhibit 14 of the complaint, Countrywide may well have an additional problem: The form purports to have been signed on Monday, September 25, and notifies the borrower that they have until September 28 to rescind. The Balderases, however, claim that the actual signing of the loan documents occurred after midnight, which would mean the loan transaction wasn't consummated until Tuesday the 26th. According to this narrative, the rescission period extended until Friday the 29th. *See* 15 U.S.C. § 1635(a). It's not clear whether there is a factual dispute on this point, as the letter sent by Countrywide seems to acknowledge that some documents were signed on the 26th. If it is established, by agreement or finding after trial, that the signing took place on Tuesday, then the notice given to the Balderases would have violated the TILA. *See Semar*, 791 F.2d at 704 ("Technical or minor violations of TILA or Reg Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind.").

**[9]** As we've said before, "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1057 (9th Cir. 2008). Here, the Balderases clearly alleged in their complaint that they were never given a Notice

of Right to Cancel that complied with TILA. If they can prove up this allegation at trial, they'll win. A complaint containing allegations that, if proven, present a winning case is not subject to dismissal under 12(b)(6), no matter how unlikely such winning outcome may appear to the district court.

**REVERSED and REMANDED.**

---

IKUTA, Circuit Judge, concurring:

I concur in the opinion except for the penultimate paragraph, in which the majority takes the opportunity to give the Balderases some helpful legal advice. After clarifying that a lender must leave the TILA Notice of Right to Cancel with the borrower in order to "deliver" it (an interpretation with which I agree), the majority worries that the broker may in fact have left the Balderases with two copies of the completed form, as per Exhibit 14 of the complaint. Maj. op. at 21516. To address its concerns, the majority seizes on a footnote in the complaint, where the Balderases asserted that "[b]ecause the signing occurred after midnight, the actual signing date was the 26th of September, 2006." Although the Balderases' counsel didn't make anything of this fact, the majority opines that if the Notice of Right to Cancel was indeed signed on September 26th, but incorrectly dated September 25, the notice itself would violate TILA. *See* maj. op. at 21516. Regardless whether the majority is better at spotting issues than the Balderases' attorneys, it is not the job of judges to make up arguments and then purport to rule on them. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). Our appearance of neutrality is damaged when we step outside our role and give a helping hand to one of the parties. Accordingly, I decline to participate in that portion of the opinion.