**ARNOLD v AKRON (city) et**

Ohio Appeals, 9th Dist, Summit Co

No 2818.   Decided Nov 27, 1936

Waters, Andress, Wise, Roetzel & Maxon, Akron, for appellant.

Errata:—The last two lines in the case of Cherry v North Fairfield Savings Bank Co. (above) should read "FUNK, PJ, and STEVENS, J, concur in judgment."

Wade DeWoody, Director of Law, Akron, and Byron H. Larabee, Asst. Dir. of Law, Akron, for appellees.

## OPINION

By WASHBURN, J.

This cause is before this court on appeal on questions of law and fact.

Appellant brought the action as a taxpayer against the city of Akron, all of the councilmen of said city, the mayor and the director of finance of said city, and one Norman S. Taber; the action being for an injunction to prevent the city from paying Taber for services rendered by him under a contract entered into between the city and said Taber.

The evidence discloses that on February 29, 1936, in pursuance of a resolution of the council of the city of Akron authorizing the same, the officers of the city, on behalf of the city, entered into a contract with said Taber whereby he agreed that, for the period of one year ending February 25, 1937, he would "act as financial consultant to said city to assist in working out a sound permanent financial program, consult with and advise officials of said city on budgetary matters, negotiate for the arrangement of new loans either temporary or permanent, and for the rearrangement of now outstanding indebtedness, and otherwise assist said city in the further restoration of its credit and finances," and the city agreed to pay him for said services a certain limited fee, if funding and refunding bonds were issued during said period; said fee being based on the amount of funding and refunding bonds issued during that period.

After the making of said contract, said Taber performed services under said contract, and on March 13, 1936, appellant filed his petition challenging the right of the city to enter into said contract.

A trial was had, and on March 27, 1936, the trial judge filed in the case a written finding, in which the court found that said Taber was not a municipal employee and

that said contract was illegal and void because in the making of the same the officials of the city failed to comply with the requirements of §5625-33, GC, in reference to attaching to said contract a certificate of the proper officer of the city that the amount required to meet the same had been lawfully appropriated for such purpose and was in the treasury.

For some reason not apparent, said finding was not spread upon the journal of the court; and, although no motion for a new trial was filed, a judgment upon such finding was not entered upon the journal of the court until April 29, 1936.

Apparently the city did not desire to question the correctness of such finding, for, on April 11, 1936, the officers of said city, on behalf of the city, being authorized by a resolution of the council of said city, entered into a second contract with said Taber, in which said Taber agreed to serve said city "as a financial consultant" from that date until the first day of September, 1936, and in which said Taber agreed to serve as an assistant to the director of finance and perform all duties required of him by such director, to "provide and furnish such information and compile such statistics" as such director or the mayor should request, to "furnish all information requested pertaining to the budgets and appropriation ordinances of the city of Akron, either for the current year or future years," to furnish said mayor and said director "all information requested with reference to outstanding bond issues, maturities of bonds, and the amount of money necessary for debt services, and (to) perform such other duties" as should from time to time be requested of him by said mayor and director; and for services under the contract the city agreed to pay said Taber the sum of $8906.94, in five equal installments on the first days of May, June, July, August and September, 1936.

On April 28, 1936, appellant filed his amended and supplemental petition (and also a separate action in the Common Pleas Court, which is now case No. 2319 in this court) to enjoin the city from carrying out said second contract. In the making of said second contract, the provisions of §5625-33, GC, were complied with.

The trial of the case was then resumed on the 29th day of April, 1936, and on June 23, 1936, the trial judge filed a written finding refusing to enjoin the carrying out of said second contract, and on July 7, 1936, the court entered judgment on both of said findings. The cause was promptly

appealed to this court, and has been submitted on the record below, together with some additional evidence.

Two questions are presented: first, as to the power of council, under the constitution and laws of the state, and the charter of the city, to authorize the making of said second contract; and second, whether such a contract could be legally entered into after the first contract had been made and declared invalid.

As to the first question:

The people of Akron, in whom all power of local self-government is vested by the constitution of Ohio, adopted a charter under which such power should be exercised.

In said charter there are enumerated a large number of such powers, and then it is provided that "The enumeration of particular powers by this charter shall not be held or deemed to be exclusive, but, in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof, the city shall have and may exercise all other powers which, under the constitution and laws of Ohio it **would be competent for this charter specifically to enumerate.** (Emphasis ours).

Said charter also provides that "all powers, whether express or implied," shall, when the manner of exercising them is not prescribed by the charter, be exercised and enforced "in such manner as shall be provided by ordinance or resolution of the council."

Said charter also provides that, except as otherwise provided therein, the council shall have **full** power and authority "to exercise all the powers" conferred upon the city by the constitution, "and all the powers conferred upon the city of Akron by this charter" and any additional powers conferred upon municipalities by the general assembly.

In so far as the charter vests certain powers in the mayor and the heads or "directors" of the various administrative departments, the charter "otherwise provides," and such powers the council may not exercise. Among such is the "preparation and submission" of annual budgets, the "appointment of officers and employees," the "control of departments and divisions," the "control over all accounts and financial records," and the making of reports "showing the financial transactions and conditions of the city."

Perhaps it should also be observed that the charter specifically provides that the council shall have power "to create new departments, offices and employments, * * * or establish temporary departments for special work, and specifically provides that the council shall not dictate, or attempt to dictate, to the mayor, or in any manner interfere with him "or prevent him from exercising his own judgment in the appointment of officers and employees in the administrative service."

It thus appears that, **as to matters of local self-government,** the city may exercise all the powers which the state, under the constitution and laws of the state, could exercise, and that such powers may be exercised by the council unless the charter otherwise provides.

One of the powers of the council enumerated in said charter is the power to "appropriate the money of the city for all purposes lawful under the provisions of this charter."

The contract sought to be invalidated in this action, which was the one entered into with Norman S. Taber on April 11, 1936, concerns a matter of local self-government.

The power to enter into such a contract is vested in the people of the city by the constitution of Ohio, and the people have in turn vested such power in the council of the city; and unless the act of entering into such a contract is not permissible under the constitution and laws of Ohio, an appropriation of the taxpayers' money to carry out said contract is lawful.

We find no provision in the laws of Ohio which prohibits the council from authorizing the officers of the city to enter into such a contract.

If the power to make such a contract existed, the question of whether the exercise of such power by the council was wise or unwise, is not a judicial question. A court is not vested with power to substitute its judgment for the judgment of individuals selected by the people to determine the advisability of entering into such a contract.

In determining whether the act of entering into such a contract was permissible under the laws of Ohio, said contract should be considered in connection with the provisions of the first contract which the council authorized the officers of the city to enter into with said Taber, which contract was invalidated by the court; and it is urged that the laws of Ohio do not permit such a contract to be made, because it is a contract to pay Taber for performing official duties which the charter requires to be performed by officials of the city;

and as authority that such a contract is not permitted under the laws of Ohio, we are cited to the case of State ex Zielonka v Carrel, Auditor, 103 Oh St 50.

In that case it was by a statute of the state made the official duty of one of the officers of the city to enter into a contract of sale of certain property of the city with the highest bidder therefor after advertisement of such sale, such officer having authority to reject any or all bids; and said officer, after deciding and advertising to receive said bids at a public auction to be held at a certain time and place, employed, in pursuance of authority given him by council of the city, an auctioneer to act in his stead and sell said property at public auction. The Supreme Court determined that, as the law made it the duty of such officer to make such sale, the council was without authority to provide for the payment of another to perform the service which the official duty of the officer required of him.

Without further reference to the provisions of said two contracts, we find that said Taber was to serve as financial consultant to certain officers of the city, that he was to assist them in working out a sound permanent financial program, that in doing so, and incidental thereto, he agreed to furnish such information pertaining to the financial affairs of said city, and compile such statistics, as they should from time to time request, and that he agreed to assist said officers in negotiating for the arrangement of new loans; but we do not find that he was to perform any of the official acts or perform any of the official duties of any of said officers; in other words, he was to advise and assist them, but not act for them. Therefore the contract did not provide for payment to Taber for performing the official duties or services of said officials, and we accordingly hold that it was not in conflict with the pronouncement of the Supreme Court in said Zielonka case or the constitution or laws of Ohio.

The charter of the city contains no provision prohibiting said contract, and, for the reasons stated, it does not contain any provision indicating that the council does not have authority, under the broad powers granted to it, to authorize the making of such a contract; and the mere fact that the charter placed upon certain officials the duty of knowing the details of the financial affairs of the city, does not justify the court in holding that the council, under its broad powers, could not employ Taber to consult with and advise such officials on financial matters, and, in connection therewith and as an incident thereto, to assist said officers in acquiring such knowledge.

As to the second question:

It must be conceded that the first contract entered into with Mr. Taber was not enforceable because the officials of the city did not observe and comply with the laws of the state in executing the same; and it is urged that the second contract, the carrying out of which is sought to be enjoined in this action, and in the making of which the officials of the city did observe and comply with the law, was a mere subterfuge, by means of which the city sought to pay Mr. Taber what was due him under the first contract at the time the same was found by the court to be unenforceable.

Granting that such claim of subterfuge is justified, the question is presented as to whether or not a municipality may recognize the first contract as creating a moral obligation which it may lawfully discharge.

An attempted ratification by a municipal corporation of a contract which it has no power to enter into, is ineffectual; but we have determined that the city had the power to enter into said first contract if it had observed the laws of the state in doing so; and a study of the cases leads us to the conclusion that, by the weight of authority, it is competent for a municipality to ratify a contract which it had the power to make, but which was invalid because defectively or irregularly executed, if such ratification was made with full knowledge of the facts, and with intent to discharge a recognized moral obligation.

While the second contract—the one now under consideration—does not purport to be a ratification of the first contract, the evidence in the record establishes that the amount agreed to be paid to Mr. Taber by said second contract was substantially the amount then due him under the first contract if it had not been defectively executed, and that, in determining the amount that should be agreed to be paid under the second contract, the amount due under the first contract was a controlling factor. It is apparent from the record that the council, in authorizing the second contract, intended to recognize that the first contract created a moral obligation, and intended to discharge the same, although the contracts differ as to duration and compensation.

We find that, in authorizing the second contract, the council and officials of the

city acted with full knowledge of the facts, and honestly and without fraud, and intended to discharge a recognized moral obligation.

Finally, it is urged that this court should enjoin payment to Mr. Taber "on the principle that no city has the right to pay any individual for acting as a salesman for its bonds," because the exercise of such a right is against a broad, sound public policy, and that to permit a city to pay an expert to consult with and advise its officials as to the affairs and financial policy of the city is likewise against public policy, because such officials are paid for performing their public duties, and the "money of the taxpayers should not be spent for a useless purpose."

In view of the fact that the people of the city, under the power of local self-government, could authorize the making of such a contract, and in view of the fact that the people, as we have pointed out, entrusted the exercise of such power to the council selected by the people, we do not feel justified under the facts and circumstances shown by the record in this case, assuming that we have the power to do so, in declaring that said contract is against public policy, regardless of whether we agree or disagree with the officials of the city as to the advisability of entering into such a contract.

Decree for the defendants on the amended and supplemental petition in this action, and the issues between the parties having been disposed of, the other case may be dismissed.

FUNK, PJ, and STEVENS, J, concur in judgment.