ORIANA HOUSE, INC. ET AL., APPELLANTS, *v.*
MONTGOMERY, AUD., APPELLEE, ET AL.

[Cite as *Oriana House, Inc. v. Montgomery,*
**108 Ohio St.3d 419, 2006-Ohio-1325.**]

(No. 2004–1769—Submitted September 27, 2005—Decided April 5, 2006.)

PFEIFER, J.

{¶ 1} We are asked to determine whether the State Auditor has authority pursuant to R.C. 117.10 to conduct a special audit of appellant Oriana House, Inc., the entity that controls the day-to-day operations of the Summit County Community–Based Correctional Facility. We hold that the State Auditor has that authority pursuant to R.C. 117.10 and 2301.56. We are also asked to determine the scope of the Auditor's authority to issue subpoenas to third parties pursuant to R.C. 117.18. We hold that under the facts of this case, the State Auditor acted within her authority when she issued subpoenas relating to appellant Correctional Health Services, Inc., but exceeded her authority with respect to subpoenas relating to appellant James Lawrence.

I

{¶ 2} R.C. 2301.51 authorizes the court of common pleas of any county to create community-based correctional facilities ("CBCFs"). CBCFs are residential lock-up facilities that provide treatment programs for certain eligible offenders. These facilities receive public funding for some or all of their expenses, R.C. 2301.51(C) and 2301.56, and are subject to restrictions imposed by law. R.C. 2301.52.

{¶ 3} CBCFs are administered by a local "judicial corrections board" made up of judges of local courts of common pleas. R.C. 2301.51(A)(1) and 2301.55. The judicial corrections board may apply for state funding to the Division of Parole and Community Services of the Ohio Department of Rehabilitation and Correction. R.C. 2301.56(A). The CBCF may not receive state funds unless the chairman of the judicial corrections board enters into an agreement with the state specifying the terms and conditions of the grant. R.C. 5120.112(C). Failure to comply with the terms of the agreement may result in denial of state funds. R.C. 5120.112(D)(2).

{¶ 4} The Summit County Court of Common Pleas established a judicial corrections board to administer the Summit County CBCF. The board selected Oriana House as the sole agency contracted to conduct the day-to-day operations of the Summit County CBCF. Consequently, Oriana House receives all the state funding granted to the Summit County CBCF and, for financial purposes, is the equivalent of Summit County CBCF. Oriana House's 2001 financial report demonstrates that 88 percent of its total income came from public sources.

{¶ 5} During the relevant period, James Lawrence was the Director of the Summit County CBCF, President and Chief Executive Officer of Oriana House, and President of Correctional Health Services, Inc. ("Correctional Health"), which is a for-profit wholly owned subsidiary of Oriana House.

{¶ 6} Sometime before 2003, the State Auditor, Betty Montgomery, became aware that during 1999 and 2000, Oriana House had loaned Correctional Health approximately $6 million, according to promissory notes executed by Lawrence. Montgomery also learned that Correctional Health had purchased property from Oriana House for $275,000, and then leased it back to Oriana House. From 1999 until 2001, the lease payments from Oriana House to Correctional Health totaled $840,278. Oriana House did not disclose the source of funding for these transactions.

{¶ 7} In January 2003, Montgomery declared her intention to conduct a special audit of Oriana House pursuant to her authority under R.C. 117.10. She determined that the transactions of Oriana, Correctional Health, and Lawrence must be examined to determine whether they involved an improper conflict of interest or misuse of public funds.

{¶ 8} Shortly after Montgomery began her audit of Oriana House, an amendment to R.C. 2301.56, enacted by Sub.H.B. No. 510, became effective. 149 Ohio Laws, Part V, 9293–9296 (effective March 31, 2003). By this amendment, the General Assembly expressly declared that CBCFs are public offices subject to audit under R.C. 117.10. In response to Montgomery's declared intention to conduct a special audit, Oriana House sent letters to Montgomery protesting the special audit, but Montgomery responded that it was her duty to proceed.

{¶ 9} Montgomery issued several subpoenas requesting specific documents related to these transactions, including bank records for Correctional Health and Lawrence. Montgomery concluded that without these documents, her office would be unable to determine whether the transactions in question were the result of improper expenditure of public funds.

{¶ 10} In September 2003, appellants, Oriana House, Correctional Health, and Lawrence, filed a verified complaint seeking a declaratory judgment and temporary, preliminary, and permanent injunctive relief to prevent the special audit and the enforcement of the subpoenas. Appellants also filed a motion for a temporary restraining order and preliminary injunction against Montgomery and others. Montgomery filed a motion to dismiss the appellants' complaint and a memorandum opposing their motion, and on October 31, 2003, the trial court denied appellants' motion for temporary injunctive relief.

{¶ 11} Appellants appealed, and on September 9, 2004, the court of appeals affirmed the trial court's decision. The court of appeals determined that Montgomery is authorized to audit the Summit County CBCF and Oriana House as public offices under R.C. 117.10 and 117.11 and that she has the authority to subpoena documents regarding private third parties under the facts of this case.

{¶ 12} This cause comes before this court upon the acceptance of a discretionary appeal.

II

{¶ 13} We must first determine whether the State Auditor has the authority to conduct a special audit of Oriana House. Oriana House receives public funds to operate the Summit County CBCF. Individuals or entities who control public funds have a duty to account for their handling of those funds. See *State ex rel. Linndale v. Masten* (1985), 18 Ohio St.3d 228, 229, 18 OBR 287, 480 N.E.2d 777; *State ex rel. Smith v. Maharry* (1918), 97 Ohio St. 272, 276, 119 N.E. 822. This duty is to "prevent frauds against the public, to protect public funds, and to place final responsibility for public funds on the shoulders of the officials charged with the collection and care of such funds." *Masten*, 18 Ohio St.3d at 229, 18 OBR 287, 480 N.E.2d 777. Statutes authorizing the State Auditor to audit the use of public funds should be liberally construed and applied to achieve those purposes. See *Maharry*, 97 Ohio St. at 276, 119 N.E. 822, and at paragraph three of the syllabus.

{¶ 14} R.C. 117.10 requires the State Auditor to conduct audits of all public offices and grants the Auditor discretion to audit "the accounts of private institutions, associations, boards, and corporations receiving public money for their use." R.C. 117.01(D) defines a "public office" as "any state agency, public institution, political subdivision, [or] other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." R.C. 117.01(C) defines "public money" as "any money received, collected by, or due a public official under color of office, as well as any money collected by any individual on behalf of a public office or as a purported representative or agent of the public office."

{¶ 15} CBCFs are established by the laws of Ohio to exercise a government function: the operation of facilities and programs for criminal offenders. CBCFs receive public funds to operate these facilities and programs. Therefore, R.C. 117.10 requires the State Auditor to audit CBCFs. Additionally, private entities receiving public funds, such as those receiving funds to operate the CBCFs, are subject to audit at the State Auditor's discretion pursuant to R.C. 117.10.

{¶ 16} R.C. 117.10 generally authorizes the State Auditor to audit CBCFs and private entities that receive public funds. By adding Division (E) to R.C. 2301.56, H.B. 510 expressly authorized the State Auditor to audit these entities pursuant to R.C. 117.10. R.C. 2301.56(E)(1) provides that CBCFs are "public offices under section 117.01 of the Revised Code and are subject to audit under section 117.10 of the Revised Code." R.C. 2301.56(E)(1) also provides that private or nonprofit entities performing the day-to-day operation of any CBCF are subject to "financial audits under section 117.10 of the Revised Code."

{¶ 17} R.C. 2301.56(E) places additional duties upon the State Auditor with respect to CBCFs and the private entities that operate them. See R.C. 2301.56(E)(1). For example, the State Auditor must conduct an initial financial audit within two years of the effective date of the H.B. 510 amendment or within two years of the establishment of a CBCF. R.C. 2301.56(E)(1)(a). The State Auditor also must "conduct the financial audits of the facility and program or the entity at least once every two fiscal years" after the initial audit. R.C. 2301.56(E)(1)(b). Finally, the State Auditor may conduct a performance audit of the entity, either on the State Auditor's own initiative or at the request of the Department of Rehabilitation and Correction or the judicial corrections board that established the facility. R.C. 2301.56(E)(1)(c). These requirements do not alter or limit the State Auditor's authority under R.C. 117.10 to conduct audits of CBCFs and private or nonprofit entities performing the day-to-day operations of these facilities, whether the audit is "special" or otherwise. R.C. 2301.56(E)(1) provides that these entities "are subject to audit under section 117.10 of the Revised Code." The use of the term "financial audit" with respect to private or nonprofit entities performing the day-to-day operation of CBCFs signifies that the State Auditor must conduct that sort of audit, as opposed to a special or performance audit, every two years. The use of the term "financial audit" in this manner does not indicate that the General Assembly intended to limit the scope of the State Auditor's authority under R.C. 117.10. We conclude that the State Auditor's discretion to conduct additional audits pursuant to R.C. 117.10 is unaffected by R.C. 2301.56(E).

{¶ 18} Because R.C. 2301.56(E)(1) does not limit the State Auditor's authority under R.C. 117.10, we now look to R.C. 117.10 to determine whether it authorizes the State Auditor to conduct a special audit of Oriana House. R.C. 117.01(G) defines "audit" as:

{¶ 19} "(1) Any examination, analysis, or inspection of the state's or a public office's financial statements or reports;

{¶ 20} "(2) Any examination, analysis, or inspection of records, documents, books, or any other evidence relating to either of the following:

{¶ 21} "(a) The collection, receipt, accounting, use, or expenditure of public money by a public office or by a private institution, association, board, or corporation;

{¶ 22} "(b) The determination by the auditor of state, as required by section 117.11 of the Revised Code, of whether a public office has complied with all the laws, rules, ordinances, or orders pertaining to the public office.

{¶ 23} "(3) Any other type of examination, analysis, or inspection of a public office or of a private institution, association, board, or corporation receiving public money that is conducted according to generally accepted or governmental audit-

ing standards established by rule pursuant to section 117.19 of the Revised Code."

{¶ 24} Ohio Adm.Code Title 117 pertains to the Auditor of State. Ohio Adm.Code 117–1–01(A) provides:

{¶ 25} "As used in Chapter 117 of the Revised Code and Title 117 of the Administrative Code:

{¶ 26} "(A) 'Audit' means an examination of financial statements, books, documents, records, and other evidence relating to the obligation, receipt, expenditure, or use of public money. An audit includes, but is not limited to, a special audit, financial audit, compliance audit, fraud and embezzlement audit, reviews of governmental operations, the performance of agreed-upon procedures, or any part or combination thereof."

{¶ 27} When read together, these statutes and regulations demonstrate that the General Assembly intended to authorize the State Auditor to conduct audits, including special audits, of CBCFs and private entities receiving public funds for the operation of CBCFs. Any other result would unduly inhibit the State Auditor's duty to ensure that public funds given to CBCFs are properly expended. Accordingly, we conclude that the State Auditor has the authority to conduct a special audit of Oriana House.

### III

{¶ 28} The next issue we must determine is whether the State Auditor exceeded her authority under R.C. 117.18 when she issued subpoenas to third parties. Specifically, we must determine whether the Auditor had authority to issue subpoenas seeking bank records of Lawrence and Correctional Health for the purpose of examining transactions between the subject of the audit—Oriana House—and Lawrence and Correctional Health.

{¶ 29} A public officer "charged with regulating and enforcing compliance with certain laws must be able to discover evidence in order to determine whether a law is being violated. To achieve this purpose, the scope of the [officer's] investigative power should be construed broadly, within statutory constraints." *Harris v. Stutzman* (1989), 42 Ohio St.3d 13, 14, 536 N.E.2d 1154.

{¶ 30} R.C. 117.18(A) authorizes the State Auditor to "issue and serve subpoenas" in the performance of any audit. In *State ex rel. Ministerial Day Care Assn. v. Montgomery,* 100 Ohio St.3d 343, 2003-Ohio-6446, 800 N.E.2d 18, we recognized the importance of the State Auditor's subpoena power in furthering her duty to determine whether public funds have been illegally expended. Id. at ¶ 5. A subpoena issued by the State Auditor must be authorized by law, must be

relevant to the investigation, and must not cause unreasonable cost or difficulty. *State ex rel. Ohio Civ. Rights Comm. v. Gunn* (1976), 45 Ohio St.2d 262, 267, 74 O.O.2d 422, 344 N.E.2d 327. See *Harris,* 42 Ohio St.3d at 15, 536 N.E.2d 1154.

{¶ 31} Pursuant to the special audit of Oriana House, the State Auditor issued subpoenas duces tecum to two banks, requesting copies of all account signature information, bank statements, deposit slips, checks, and supporting documents held in the name of Lawrence and Correctional Health from January 1, 1998, to the present, and to a credit-card company requesting copies of credit-card statements for Oriana, Lawrence, and Correctional Health, also from January 1, 1998, to the present. The State Auditor determined that the subpoenaed records were necessary to verify certain claims of Oriana House. We must determine whether the subpoenas are authorized by law.

{¶ 32} As previously discussed, the State Auditor has the authority to audit the Summit County CBCF and Oriana House. In furtherance of this authority, the General Assembly granted the State Auditor the power, "in the performance of any audit, [to] issue and serve subpoenas and compulsory process * * * [and] compel the * * * production of records." R.C. 117.18(A). This power is limited only by the words "in the performance of any audit," and we must therefore assume that the only further restrictions on the Auditor's authority are relevance and reasonableness, as set forth in *Gunn,* 45 Ohio St.2d at 267, 74 O.O.2d 422, 344 N.E.2d 327. As the Auditor has issued these subpoenas in the performance of her special audit, the subpoenas were authorized by law.

{¶ 33} On the issue of relevance, the Auditor based her request for the records of Correctional Health and Lawrence on their close relationship with Oriana House. Lawrence was an officer of Oriana House and Correctional Health, and the Auditor knew of certain large transactions between Oriana House, and Correctional Health, its wholly owned subsidiary, amounting to nearly $7 million, for which Oriana would not disclose the source of funding. The State Auditor did not initiate an audit of Lawrence or Correctional Health. Instead, she issued subpoenas requesting certain of their financial records that she believes will assist her office in exploring the nature of the transactions by Oriana House. The State Auditor's concern was whether the public funds provided to the Summit County CBCF and Oriana House had been used appropriately and in accordance with the grant agreements.

{¶ 34} We conclude that the transactions in question between Oriana House and Correctional Health were fraught with potential conflict of interest. The two entities shared the same president. Correctional Health is a wholly owned subsidiary of Oriana House. Oriana House and Correctional Health engaged in several large-scale transactions, the funding for which Oriana House would not disclose. The State Auditor has the duty to ensure that the public funds at issue

are being used appropriately and in accordance with the grant agreements. Furthermore, the State Auditor must be able to follow a money trail to examine potential or inherent conflicts of interest between closely related entities receiving public funds. We conclude that the State Auditor has demonstrated that the records requested relating to Correctional Health are relevant to the special audit of Oriana House. Nothing in the record before us, however, indicates that the records relating to Lawrence are relevant to the special audit of Oriana House. Thus, the Auditor exceeded her authority in issuing subpoenas for Lawrence's records. This conclusion does not preclude the Auditor from issuing subpoenas in the future for records relevant to the special audit of Oriana House based on previously discovered information that is not in the record or newly discovered information.

{¶ 35} Finally, we must also consider the "difficulty and cost of production of the material sought." *Gunn*, 45 Ohio St.2d at 267, 74 O.O.2d 422, 344 N.E.2d 327. Beyond providing a conclusory statement, appellants have not argued that complying with the subpoenas would create unreasonable costs or difficulty. In any event, individuals and entities who control public funds have a duty to account for their handling of public funds. See *Masten*, 18 Ohio St.3d at 229, 18 OBR 287, 480 N.E.2d 777; *Maharry*, 97 Ohio St. at 276, 119 N.E. 822. Based on the record before us, we cannot conclude that complying with the State Auditor's subpoenas will be unreasonably costly or difficult.

## IV

{¶ 36} We hold that the State Auditor has the authority to conduct a special audit of Oriana House pursuant to R.C. 117.10 and 2301.56. We also hold that the subpoenas issued by the State Auditor, except those issued for the records of James Lawrence, are lawful and enforceable.

> Judgment affirmed in part
> and reversed in part.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

––––––––––

Benesch, Friedlander, Coplan & Aronoff, L.L.P., Orla E. Collier III, and Frank J. Reed Jr., for appellants.

Jim Petro, Attorney General; Isaac, Brant, Ledman & Teetor, L.L.P., Mark Landes, and Mark H. Troutman, for appellee.

Porter, Wright, Morris & Arthur, L.L.P., and Kathleen M. Trafford, urging reversal for amicus curiae Ohio Association of Child Caring Agencies.

Zeiger, Tigges, Little & Lindsmith, L.L.P., and Quintin F. Lindsmith, urging reversal for amicus curiae Ohio Community Correction Association.

William F. Schenck, Greene County Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Peter M. Thomas, Senior Deputy Attorney General, and Matthew J. Lampke, Deputy Attorney General, urging affirmance for amicus curiae Ohio Ethics Commission.