[Cite as *Sylvester Summers, Jr. Co., L.P.A. v. E. Cleveland*, 2013-Ohio-1339.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98227**

# SYLVESTER SUMMERS, JR. CO., L.P.A.

### PLAINTIFF-APPELLEE

vs.

# CITY OF EAST CLEVELAND

### DEFENDANT-APPELLANT

## JUDGMENT:
REVERSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-723739 and CV-727872

**BEFORE:** E.T. Gallagher, J., Stewart, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** April 4, 2013

**ATTORNEYS FOR APPELLANT**

Deborah Gooden Blade
Assistant Law Director
City of East Cleveland
14340 Euclid Avenue
East Cleveland, Ohio   44112

Sean P. Ruffin
401 Tuscarawas Street, West
Suite 200
Canton, Ohio   44702


**ATTORNEY FOR APPELLEE**

Sylvester Summers, Jr., pro se
Sylvester Summers, Jr. Co., L.P.A.
7804 Linwood Avenue
Cleveland, Ohio   44103

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, city of East Cleveland ("the City"), appeals the trial court's judgment in favor of plaintiff-appellee, Sylvester Summers, Jr., Co., L.P.A. ("Summers"), in the amount of $55,169.97 for unpaid legal fees. We find merit to the appeal and reverse.

**{¶2}** In April and May 2010, Summers filed two separate actions against the City to recover fees for legal services Summers performed in connection with its representation of the City in two separate cases. In the first case, *Davis v. E. Cleveland*, N.D.Ohio No. 1:03cv02075, 2006 U.S. Dist. LEXIS 11913 (Mar. 21, 2006) (*"Davis"*), Summers defended the City against Davis's claim that several East Cleveland police officers used excessive force against him in violation of his civil rights. In the second case, *E. Cleveland v. CH2M Hill/OMI*, N.D.Ohio No. 1:08cv02309 ("*CH2M Hill*"), Summers filed suit on the City's behalf against CH2M Hill, a former water services vendor, who allegedly obtained funds from the City by fraud in violation of federal racketeering laws. Shortly after Summers filed the complaints in this case, they were consolidated for trial.

**{¶3}** In response to the complaints, the City filed third-party complaints against former Mayor Eric Brewer alleging that he wrongfully retained Summers without proper authorization. Throughout the litigation, the City conceded that Summers performed legal services on its behalf, but claimed that it was not obligated to pay for the services because

the City failed to comply with Section 72 of its charter as well as R.C. 705.41 and 705.11, which required approval from both the city council and the law director prior to entering into a contract. As such, the City argued, any contract between Summers and the City was void.

{¶4} During discovery, Summers served the City with three separate requests for admissions. The City responded to the first set of requests for admissions after the response deadline, and Summers moved to have them deemed admitted. One of the requests sought an admission that the East Cleveland law department entered into an express contract for Summers's legal representation in its case against CH2M Hill. The court denied the motion, stating that it preferred to resolve the case on the merits rather than on technicalities.

{¶5} Summers later propounded second and third sets of requests for admissions. The third set of requests included the same admission that the City entered into an express contract for Summers's legal services, which was included in the first request for admissions. After the City failed to provide timely responses to these requests, Summers again moved to have its requests for admissions deemed admitted. The court granted the motion, which was unopposed.

{¶6} At a bench trial, Sylvester Summers, Summers's principal, testified that in 2004, when the City retained his office to defend it in *Davis*, the City had already hired him to represent it in four or five other pending cases over the last two to three years, and the City had paid most of its bills. He further testified that he filed the complaint in

*CH2M Hill* in 2008 and that after paying some of the fees, the City's law director was substituted as counsel in the *CH2M Hill* litigation in 2009 because the City could not afford to pay his bills.

{¶7} Ronald Brooks ("Brooks"), the City's finance director, testified that he recalled there was a certification of funds attached to the contracts between Summers and East Cleveland. He also identified numerous vouchers for payment, which he certified to authorize payment of Summers's monthly invoices. Ronald Riley ("Riley"), the City's law director, admitted that the City retained Summers to sue *CH2M Hill* to recover funds it allegedly obtained from the City through fraud. He also admitted that despite using Summers's services, they decided not to compensate him because he stopped working and exposed the City to substantial liability. Riley never filed any kind of complaint with the Ohio Supreme Court for Summers's alleged malfeasance, and there was no claim for legal malpractice.

{¶8} Following trial, the court entered judgment in favor of Summers in the amount of $55,169.97. The City now appeals and raises six assignments of error, which we address out of order for the sake of economy.

## Admissions

**{¶9}** In its second assignment of error, the City contends the trial court erred in deeming Summers's third set of requested admissions admitted. In its sixth assignment of error, the City argues the trial court erred when it denied its motion to vacate and withdraw the admissions. The City claims that because the requests for admissions were embedded in Summers's "Combined Discovery Requests," they failed to provide notice that requests for admissions were included in the discovery. Without notice, the City asserts, it was not required to respond to the requested admissions, and the trial court abused its discretion by deeming the requests admitted under these circumstances.

**{¶10}** Under Civ.R. 36(A) and (B), the matters set forth in requests for admissions are automatically deemed admitted if they are not answered in accordance with the rule. *Bank of N.Y. v. Jordan*, 8th Dist. No. 88619, 2007-Ohio-4293, ¶ 34, citing *Beechwoods, Inc. v. Hosfelt*, 10th Dist. No. 79AP-117, 1979 Ohio App. LEXIS 12493 (Oct. 9, 1979). The facts deemed admitted are conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. *Id.* "A request for admission can be used to establish a fact, even if it goes to the heart of the case." *Cleveland Trust Co. v. Willis*, 20 Ohio St.3d 66, 67, 485 N.E.2d 1052 (1985). "This is in accord with the purpose of the request to admit — to resolve potentially disputed issues and expedite the trial." *Id.*, citing *St. Paul Fire & Marine Ins. Co. v. Battle,* 44 Ohio App.2d 261, 269, 337 N.E.2d 806 (8th Dist.1975).

{¶11} Despite the City's statements to the contrary, the requests for admissions were set forth in the captions of the propounded discovery. The caption to the third set of requested admissions states: "Plaintiff Sylvester Summers, Jr. Co. LPA's Third Set of Request for Admissions and Interrogatories to Defendant City of East Cleveland." Summers's requested admissions were clearly designated in these captions as permitted under Civ.R. 36(C).[1] They were not obscured in the midst of interrogatories or requests for production of documents. Therefore, they provided sufficient notice to require a timely response.

{¶12} We do not find the court's failure to withdraw the admissions constituted an abuse of discretion. Civ.R. 36(B) discusses when withdrawal or amendment is permitted:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Civ.R. 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining his action or defense on the merits.

{¶13} The clear language of the rule does not require the trial court to withdraw or amend the admission even if the test for allowing withdrawal or amendment is shown. A trial court's decision on a motion to withdraw admissions will not be disturbed on appeal

---

[1] Civ.R. 36(C) states, in pertinent part: "If a party includes a request for admission in a document containing any other form of discovery, the party shall include a caption on the document that indicates the document contains a request for admission."

absent an abuse of discretion. *Aetna Cas. & Surety Co. v. Roland*, 47 Ohio App.3d 93, 547 N.E.2d 379 (10th Dist.1988).

{¶14} By the time the court granted Summers's motion to have the third set of admissions deemed admitted, the discovery deadline had passed and the trial had already been continued twice. The parties had already filed their witness lists and trial briefs. Furthermore, the City not only failed to respond to the requested admissions, it failed to oppose the motion to have the admissions deemed admitted. To withdraw the admissions on the eve of trial would have prejudiced Summers.

{¶15} The fact that the third set of requested admissions contained the same admission that the City entered into an express contract with Summers as was included in the first request for admissions is insignificant because Civ.R. 36 is "self-executing." Civ.R. 36(A)(1) plainly states:

> The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service of a printed copy of the request * * * the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

Because the rule is self-enforcing, the trial court has no discretion whether to deem the matters admitted. If the requests are not answered by the deadline, they are automatically admitted, and the trial court must recognize them unless and until a party moves to have the admissions withdrawn. The City never moved to have the first set of admissions withdrawn.

**{¶16}** Therefore, the admissions conclusively established that the City had an express contract with Summers for legal representation in *CH2M Hill*. The court did not abuse its discretion in deeming the admissions admitted and not withdrawing the admissions. Accordingly, we overrule the second and sixth assignments of error.

## Contract Enforceability

**{¶17}** In the first assignment of error, the City argues the trial court erred in granting judgment in favor of Summers where there was no evidence that the City owed Summers any debt. In the third assignment of error, the City argues there was insufficient evidence on which the trial court could find that it breached any contract with Summers. We address these assigned errors together because they are interrelated.

**{¶18}** The City argues that Summers did not have an enforceable contract with it because the parties' agreement was not properly ratified by the city council and the law director as required by the City's charter. Summers contends the parties' contract was enforceable as an implied contract even though it failed to meet the charter requirements. He asserts that the parties' course of dealing, whereby he performed work on a number of cases for the City and the City paid most his invoices, demonstrates the existence of an enforceable contract.

**{¶19}** Section 72 of the City's charter states:

> The Mayor may make any contract or purchase supplies or material, or provide labor for any work in any department, not involving more than Two Thousand Five Hundred Dollars or the amount stipulated by State law, whichever amount is the greater. When any expenditure within any department other than the compensation of persons employed therein, exceeds Two Thousand Five Hundred Dollars or the amount stipulated by

State law, whichever amount is the greater, such expenditure shall first be authorized and directed by ordinance of the Council, and when so authorized and directed the Mayor shall make a written contract. * * * No such contract shall be entered into by the Mayor until the approval thereof by the Council has been first had and obtained.

{¶20} Section 75 of the City's charter further provides:

All contracts, agreements or other obligations entered into and all ordinances passed or resolutions and ordered adopted contrary to the provisions of the preceding section shall be void.

{¶21} Summers's fees exceeded the limitation set forth in the charter, and it is undisputed that the city council never approved the parties' contract. Therefore, the City's express contract, which was conclusively established by admission, for Summers's legal services is void and unenforceable.

{¶22} Accordingly, the first and third assignments of error are sustained.

**Unjust Enrichment, Promissory Estoppel, and Quantum Meruit**

{¶23} In the fourth assignment of error, the City argues that Summers is not entitled to recover any damages in the absence of an enforceable contract because equitable claims of promissory estoppel, unjust enrichment, and quantum meruit are not actionable against a municipality. Although we find the outcome unfair under the circumstances of this case, we cannot disagree.

{¶24} An appellate court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. *Roberts v. U.S. Fiduciary & Guar. Co.*, 75 Ohio St.3d 630, 634, 1996-Ohio-101, 665 N.E.2d 664.

{¶25} "It is a long-standing principle of Ohio law that 'all governmental liability ex contractu must be express and must be entered into in the prescribed manner, and that

a municipality or county is liable neither on an implied contract nor upon a quantum meruit by reason of benefits received.'" *Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio App.3d 33, 44, 713 N.E.2d 1075 (8th Dist.1998), citing 20 Ohio Jurisprudence 3d, Counties, Townships and Municipal Corporations, Section 278, at 241 (n.d.); *Shampton v. Springboro,* 98 Ohio St.3d 457, 2003-Ohio-1913,786 N.E.2d 883 (holding that city was not liable on the basis of promissory estoppel even though tenant was induced by city's promise of a long term lease to invest in a restaurant on city property).

{¶26} The Ohio Supreme Court has held that an individual or entity entering into a contract with a municipality bears the burden of "'ascertain[ing] whether the contract complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril.'" *Shampton* at ¶ 28, quoting *Lathrop Co. v. Toledo*, 5 Ohio St.2d 165, 173, 214 N.E.2d 408 (1966). Therefore, Summers's quasi-contract claims of promissory estoppel, unjust enrichment, and quantum meruit are not actionable against the City.

{¶27} The trial court's decision holding the City liable for Summers's fees is clearly erroneous under the circumstances of this case. A trial court abuses its discretion where its decision is clearly erroneous and based on either a disregard for the law or a misapplication of the law to undisputed facts. *Ohio Civ. Rights Comm. v. Case W. Reserve Univ.*, 76 Ohio St.3d 168, 1996-Ohio-53, 666 N.E.2d 1376, citing *Alexander v. Mt. Carmel Med. Ctr.*, 56 Ohio St.2d 155, 383 N.E.2d 564 (1978).

{¶28} Although it seems unfair that the City would be permitted to retain the benefit of Summers's services without paying for them, we are mindful that Summers specializes in municipal law and had constructive notice that his contracts would be void if they failed to meet the statutory requirements. We also note that Summers continued

to work on the City's cases even after it stopped regularly paying his invoices. Unfortunately, Summers assumed the risk that he would not be paid.

**{¶29}** The fourth assignment of error is sustained.

## Motion to Dismiss

**{¶30}** In the fifth assignment of error, the City argues the trial court erred in denying its motion to dismiss. The City asserts the complaints should have been dismissed because Summers failed to attach contracts to the complaints as required by Civ.R. 10.

**{¶31}** Civ.R. 10(D)(1) states, in pertinent part: "When any claim * * * is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading." Failure to comply with Civ.R. 10(D), however, does not require dismissal of the complaint. "Courts have repeatedly held that when a plaintiff fails to attach a copy of a written instrument to his complaint, the proper method to challenge such failure is by filing a Civ.R. 12(E) motion for a more definite statement." *Castle Hill Holdings, L.L.C. v. Al Hut, Inc.*, 8th Dist. No. 86442, 2006-Ohio-1353, ¶ 26. Indeed, a defendant who fails to file a Civ.R. 12(E) motion before filing his answer has been held to have waived his right to assert Civ.R. 10(D) as a basis for dismissing the plaintiff's complaint. *Glenwood Homes, Ltd. v. State Auto Mut. Ins. Co.*, 8th Dist. No. 72856, 1998 Ohio App. LEXIS 4656 (Oct. 1, 1998).

**{¶32}** Therefore, because the trial court properly overruled the City's motion to dismiss, we overrule the fifth assignment of error.

**{¶33}** Having determined that Summers's contracts with the City were void because they failed to comply with strict statutory and charter requirements for municipal contract formation, we reverse the trial court's judgment.

**{¶34}** Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

MELODY J. STEWART, A.J., CONCURS (WITH SEPARATE OPINION);
MARY EILEEN KILBANE, J., CONCURS IN PART AND DISSENTS IN PART
(WITH SEPARATE OPINION)

MELODY J. STEWART, A.J., CONCURRING:

**{¶35}** I concur with the majority opinion, but write separately to emphasize that there are no winners in this case.

**{¶36}** The circumstances surrounding Summers's legal representation of the City are baffling to me. It is clear that any agreement for legal services that Summers may have entered into with any city official was in violation of the city charter and therefore void if that agreement exceeded $2,500 (or an amount stipulated by state law) and was

not authorized and directed by ordinance of the city council. The charter provisions serve to help balance the power of local government officials, *see Coyne v. Salvatore*, 8th Dist. Nos. 79507, 79509, and 79510, 2002-Ohio-5819, and help ensure accountability in expending taxpayer funds. *See State ex rel. Linndale v. Masten*, 18 Ohio St.3d 228, 480 N.E.2d 777 (1985); *Oriana House, Inc. v. Montgomery, Aud.*, 108 Ohio St.3d 419, 2006-Ohio-1325, 844 N.E.2d 323.

**{¶37}** Although various former city officials partially reimbursed Summers for services, those payments in excess of what the charter permits were not sanctioned by the city council. At all events, the city council was never involved in approving, authorizing, ratifying, or directing any payments to Summers. This unfortunate set of circumstances notwithstanding, it certainly could be argued that the City has a moral obligation to compensate Summers for its services.

**{¶38}** Courts in Ohio have long recognized the ability of governmental entities to make payments based on a moral obligation when there has been a benefit to the governmental entity, there is no fraud, and the payment would not be a mere gratuity. *See Arnold v. Akron*, 54 Ohio App. 382, 7 N.E.2d 660 (9th Dist.1936); *State ex rel. Caton v. Anderson*, 159 Ohio St. 159, 111 N.E.2d 248 (1953), ¶ 165; *Ingraham v. Medina Twp. Bd. of Trustees*, 9th Dist. No. 1853, 1990 Ohio App. LEXIS 2927 (July 11, 1990). For the City to make such a payment, however, would require the participation of council: apparently a novel concept to those who have been involved in this case.

MARY EILEEN KILBANE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶39} I concur with the majority on the City's second, fifth, and sixth assignments of error relating to Summers's third set of admissions and the City's motion to dismiss. However, I respectfully dissent from the majority's findings on the first, third, and fourth assignments of error. I would affirm the trial court's judgment in favor of Summers.

{¶40} The majority cites to *Kraft,* 128 Ohio App.3d at 44, 713 N.E.2d 1075 and *Shampton*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, at ¶ 36, in support of its decision to reverse the trial court's judgment in favor of Summers. I find the circumstances in *Shampton* distinguishable from the instant case. While the *Shampton* court found the city was not liable to the tenant on the basis of promissory estoppel, the court found there was no agreement between the City and the tenant. In the instant case and unlike in *Shampton*, Mayor Brewer did not request a resolution from city council before entering into the contract with Summers. The City admitted a contract was entered into with Summers, Law Director Riley approved the payments, and Finance Director Brooks made the payments.

{¶41} Furthermore, in *Kraft*, this court upheld the jury's damages award to Kraft for unjust enrichment. *Id.* at 35. On appeal, the County argued that the damages award was against the manifest weight of the evidence. We acknowledged the "long-standing principle of Ohio law that 'all governmental liability ex contractu must be express and must be entered into in the prescribed manner, and that a municipality or county is liable neither on an implied contract nor upon a quantum meruit by reason of benefits

received.'" *Id.* at 44, quoting 20 Ohio Jurisprudence 3d, Counties, Townships and Municipal Corporations, Section 278, at 241 (n.d.). However, based on the evidence in the record, we "[could not] find that the trial court's finding of unjust enrichment was against the manifest weight of the evidence." *Id.* at 52.

{¶42} Kraft's theory of unjust enrichment was premised on the argument that "the County economically forced Kraft to build a larger and more expensive pumping station than Kraft's own needs required; that the County did this by requiring expensive changes, refusing to enter into necessary contracts and threatening to deny tap-ins to the Kraft lots served by the system unless Kraft succumbed to its wishes." *Id.* at 50. We agreed with the trial court's decision that the facts in that case "'support a finding that Defendant wrongfully received and benefitted from its dealings with Kraft and that justice dictates that it not be permitted to enrich itself unjustly thereby.'" *Id.* at 49.

{¶43} Similarly, the facts in the instant case support a finding in favor of Summers. Here, there is no dispute that the City benefitted from Summers's successful representation in the two federal court cases — *Davis v. E. Cleveland*, N.D.Ohio No. 1:03cv02075 (a jury trial lasting two days) and *E. Cleveland v. CH2M Hill/OMI*, N.D.Ohio No. 1:08cv02309. Through the evidence presented at trial and the properly admitted admissions, it is undisputed that the City retained Summers to perform these legal services. Summers's third set of requests for admissions, which were all unopposed by the City, state in pertinent part:

REQUEST FOR ADMISSION NO. 2

Admit that Defendant and Plaintiff entered into an express contract for legal services in the Federal Case in May of 2008, wherein Defendant agreed to pay Plaintiff for its services at a monthly hourly rate of $125.00.

REQUEST FOR ADMISSION NO. 3

Admit that Plaintiff agreed to provide Defendant with legal services, by and through, its Law Department, in the Federal Case commencing in May 2008 on a monthly basis.

REQUEST FOR ADMISSION NO. 4

Admit that Plaintiff began rendering legal services under the express contract with Defendant in May 2008, and, Defendant made erratic and sporadic payments against the amounts owed for those services in the Federal Case.

REQUEST FOR ADMISSION NO. 5

Admit that Plaintiff conferred a benefit upon Defendant comprised of legal services rendered in the Federal Case between September 2008 through August 2009 without Defendant fully compensating Plaintiff for those services.

REQUEST FOR ADMISSION NO. 6

Admit that Defendant was aware that Plaintiff was providing legal services in the Federal Case, even though Defendant refused to pay for all those services rendered during the period from September 1, 2008 through August 31, 2009.

REQUEST FOR ADMISSION NO. 7

Admit that Defendant breached the terms of the express contract between the parties when it failed to pay for all of the legal services provided by Plaintiff in the Federal Case.

REQUEST FOR ADMISSION NO. 8

Admit that Plaintiff continued to provide Defendant with legal services in the Federal Case during the period from September 2008 through July 2009 although Defendant failed to pay Plaintiff's monthly billing statements during that same period of time.

<u>REQUEST FOR ADMISSION NO. 10</u>

Admit that Defendant retained the benefit of the legal services provided by Plaintiff in the Federal Case without paying for all of those services.

<u>REQUEST FOR ADMISSION NO. 14</u>

Admit that Defendant's officials made clear and unambiguous material representations to Plaintiff that they would pay Plaintiff for any legal services and expenses that were provided to Defendant in the Federal Case so long as Plaintiff continued to provide legal services.

**{¶44}** Furthermore, Mayor Brewer, Law Director Riley, and Finance Director Brooks made both oral and written representations to Summers that the City would pay for his legal services. Numerous contract letters were exchanged between Summers and the mayor, which were also sent to Riley, and Brooks certified numerous purchase orders to pay Summers for the legal services he rendered. In fact, the City made a partial payment to Summers of $5,000 in the *Davis* case and agreed to pay Summers a $4,000 retainer and an hourly rate of $125 per hour, with paralegals receiving a rate of $90 per hour in the *CH2M Hill* case. The agreement in the *CH2M Hill* case was signed by Summers and the mayor and was faxed to the law director. The finance director testified at trial that he authorized and certified funds to pay Summers's legal fees in the *CH2M Hill* case.

**{¶45}** In the instant case, the evidence established a course of conduct where Summers provided legal services at the mayor's direction, with Law Director Riley's approval, and payment by Finance Director Brooks, with the required certification. The trial court concluded "after having heard all of the testimony and examining all of the

evidence, including the admissions that have been deemed admitted due to [the City's] failure to respond, that judgment is rendered in favor of [Summers] in the amount of $55,169.97."

**{¶46}** The majority finds that the trial court abused its discretion by holding the City liable for Summers's fees. I disagree with the majority's application of the abuse of discretion standard of review. In the City's third assignment of error, the City argues that the trial court's judgment is against the manifest weight of the evidence. When conducting a manifest weight review, every reasonable presumption must be made in favor of the trial court's finding, and when the evidence is susceptible of more than one construction, we are bound to apply an interpretation that is consistent with the trial court's decision. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Based on the circumstances of the instant case, I cannot find the trial court's judgment is against the manifest weight of the evidence as the City contends.

**{¶47}** Accordingly, I would affirm the first, third, and fourth assignments of error.