Melvin T. YAMAMOTO; Elaine S. Yamamoto; Maxine H. Tampon, Plaintiffs–Appellants,

v.

BANK OF NEW YORK; BNC Mortgage; U.S. Financial Corporation, Defendants–Appellees.

No. 01–16427.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2003.

Filed May 29, 2003.

Gary Victor Dubin, Honolulu, HI, for the Plaintiffs–Appellants.

Mark D. Bernstein, Honolulu, HI, for Defendant–Appellee, U.S. Financial Mortgage Corp.

Steven K.S. Chung, Oshima Chun Fong & Chung, Honolulu, HI, for Defendant–Appellee, BNC Mortgage, Inc.

Mary Martin, Stanton Clay Chapman Crumpton & Iwamura, Honolulu, HI, and Gary Y. Okuda, Leu & Okuda, Honolulu, HI, for Defendant–Appellee, Bank of New York.

Before GOODWIN, RYMER, and T.G. NELSON, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to decide whether a court may order borrowers who seek recission of a mortgage under the Truth in Lending Act (TILA), 15 U.S.C. § 1635, to show that proceeds can be tendered if they prevail. Here, the borrowers testified that they could not fulfill TILA's tender requirement, and the district court gave them sixty days before dismissing their recission claim to attempt to do so. When they were unable to provide evidence that they could tender the proceeds, the court granted summary judgment in favor of the lender. We hold that a district court has discretion to modify the sequence of rescission events in these circumstances, and affirm.

I

On January 23, 1997, Melvin and Elaine Yamamoto, through their mortgage broker U.S. Financial Mortgage Corp. (USF), borrowed $172,500 from BNC Mortgage, Inc. (BNC) to refinance an existing mortgage on their home. The loan was co-signed by their daughter, Maxine Tampon. On February 3, 1997, BNC assigned the Yamamoto/Tampon mortgage to the Bank of New York (BNY).

After making eight payments (totaling approximately $12,000), the Yamamotos and Tampon defaulted. In March 1998, the Yamamotos filed for Chapter 7 bankruptcy relief. BNY subsequently obtained a stipulation for relief from the bankruptcy stay and instituted foreclosure proceedings on the Yamamotos' home, the property

secured by the loan. The Yamamotos received a discharge in bankruptcy June 15, 1998.

In July 1998 the Yamamotos and Tampon notified BNC that they were exercising their right to cancel the loan due to BNC's failure to provide them with notice of right to cancel forms required under TILA. They claimed that upon receipt of the letter the mortgage was automatically void and BNC was required to release its security interest in their home within 20 days. BNC responded that a timely Notice of Right to Cancel had been provided on January 24, 1997. The Yamamotos/Tampon mailed a similar letter to BNY on September 30, 1998. BNY then discontinued the foreclosure proceedings.

The Yamamotos and Tampon brought suit against BNY, seeking statutory damages and recission on account of the failure to disclose the right to cancel and an inaccurate disclosure of appraisal fees in violation of TILA. BNY filed a third-party complaint against BNC, the original lender, who in turn filed a fourth-party action against USF, the Yamamotos' mortgage

broker. The parties brought cross-motions for summary judgment. The district court determined that the damages claim was barred by TILA's one-year statute of limitations, 15 U.S.C. § 1640(e), but it found a triable issue of fact as to whether Yamamotos/Tampon received the proper disclosures. The court also held that the bankruptcy trustee was the proper plaintiff to pursue recission rather than the Yamamotos, and that the Yamamotos and Tampon, who had indicated that they were unable to tender the proceeds, could have sixty days to try to do so.[1] When the Yamamotos/Tampon failed to comply with either condition, the court dismissed the action and entered judgment for BNY. This appeal followed.[2]

## II

Tampon argues that the district court could not deny her recission for failure to pay back loan proceeds without first determining whether TILA was violated, and without recognizing that TILA, and Federal Reserve Board Regulation Z implementing it, 12 C.F.R. § 226.23(d), automatically voided BNY's security interest in her property once she exercised her right to rescind.[3] She posits that language added

1. The court dismissed the state law claim brought under Hawaii's Unfair and Deceptive Trade Practices Act. The Yamamotos and Tampon do not challenge this ruling, nor do the Yamamotos appeal the decision to substitute the bankruptcy trustee in their stead. The Yamamotos' status makes no difference to resolution of the recission claim in any event, as Tampon may pursue this relief in her own right. While their brief mentions the issue of whether BNY was entitled to summary judgment on their claim for statutory damages, the issue is not argued and we deem it abandoned. See Kohler v. Inter–Tel Techs., 244 F.3d 1167, 1182 (9th Cir.2001) ("Issues raised in a brief which are not supported by argument are deemed abandoned.").

2. There is a question whether the district court entered a final decision that is appealable under 28 U.S.C. § 1291 because its order did not explicitly deal with the third and

fourth-party complaints which arguably could be read as seeking relief beyond contribution and indemnity. However, in response to our request for supplemental briefing, BNY and BNC represented that their complaints were reactive only and were therefore mooted by the court's ruling on summary judgment in favor of BNY. This, together with the fact that the court's order does dismiss the action, satisfies us that we may exercise appellate jurisdiction. See Peura v. Mala, 977 F.2d 484, 487 n. 3 (9th Cir.1992) (oversight in not disposing of third-party claims does not bar appellate jurisdiction); see also Fed. Ins. Co. v. Scarsella Bros., Inc., 931 F.2d 599, 601 (9th Cir. 1991) (inferring rejection of claims where decision resolved all issues necessary to establish legal rights and duties of the parties).

3. She also maintains that the sixty days allowed was inadequate and that no determination was ever made about the amount required to be tendered. However, no ob-

in 1981 to Regulation Z indicates that a court has no discretion to change the substantive provisions of the Act, which is what she contends that the court did when it required tender prematurely. BNY counters that courts have long had equitable discretion to make repayment of loan proceeds a prerequisite to rescission under TILA, and that discretion to alter the sequence of recission events is expressly preserved by Regulation Z.

TILA was enacted in 1968 "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). If required disclosures are not made, the consumer may rescind. *See* 15 U.S.C. § 1635(a). Section 1635(b) governs the return of money or property when a borrower exercises the right to rescind.[4] It provides that the borrower is not liable for any finance or other charge, and that any security interest becomes void upon such a rescission. The statute adopts a sequence of rescission and tender that must be fol-

lowed unless the court orders otherwise: within twenty days of receiving a notice of rescission, the creditor is to return any money or property and reflect termination of the security interest; when the creditor has met these obligations, the borrower is to tender the property.

Section 226.23 of Regulation Z implements § 1635(b). It tracks the statute and states:

(d) Effects of rescission.

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has

---

jection on either basis was made in the district court. Tampon never asked for more time, or indicated any ability to repay any amount. Nor did her counsel manifest any confusion about how the recission amount would be calculated. Therefore, we focus only on the legal question the appeal presents: whether the court had discretion to dismiss Tampon's recission claim for inability to tender proceeds without first determining if TILA were violated.

4. Section 1635(b) states in full:

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any

money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor....

(4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

12 C.F.R. § 226.23.

TILA's provision permitting a court to modify procedures was added in 1980 as part of the Truth in Lending Simplification and Reform Act, Pub.L. No. 96–221, tit. VI, § 612(a)(4), 94 Stat. 168, 175 (1980) (codified as amended at 15 U.S.C. § 1635(b) (1988)). *See Williams v. Homestake Mortgage Co.,* 968 F.2d 1137, 1139–40 (11th Cir.1992) (explaining background). In turn, subsection (d)(4) was added to Regulation Z in 1981. These changes followed in the wake of decisions by this court and others which held that the statute need not be interpreted literally as always requiring the creditor to remove its security interest prior to the borrower's tender of proceeds. *See, e.g., Palmer v. Wilson,* 502 F.2d 860, 862–63 (9th Cir. 1974); *Ljepava v. M.L.S.C. Props., Inc.,* 511 F.2d 935, 944 (9th Cir.1975); *LaGrone v. Johnson,* 534 F.2d 1360, 1361–62 (9th Cir.1976); *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 253–54 (6th Cir.1980); *Powers v. Sims & Levin,* 542 F.2d 1216, 1220–22 (4th Cir.1976); *but see Gerasta v. Hibernia Nat'l Bank,* 575 F.2d 580, 585 (5th Cir.1978).

■ Since *Palmer* we have recognized that in applying TILA, "a trial judge ha[s] the discretion to condition rescission on tender by the borrower of the property he had received from the lender." *Ljepava,* 511 F.2d at 944 (citing *Palmer,* 502 F.2d at 863–64). As we explained, whether a decree of rescission should be conditional depends upon "the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that

underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act." *Palmer,* 502 F.2d at 862. Indeed, in *LaGrone* we held that rescission *should be* conditioned on repayment of the amounts advanced by the lender. *LaGrone,* 534 F.2d at 1362. We noted that the TILA violations there were not egregious (failure to disclose an acceleration clause and amount financed in the broker's statement, and to delineate additional data from mandatory data), and that the equities favored the creditor who would otherwise have been left in an unsecured position in the borrower's intervening bankruptcy. *Id.*

Tampon correctly points out that we made it clear in *Semar v. Platte Valley Federal Savings & Loan Association,* 791 F.2d 699, 705–06 (9th Cir.1986), that courts have no discretion to alter TILA's *substantive* provisions. However, *Semar* left intact the discretion to alter TILA's *procedural* provisions. In *Semar,* the district court had made the borrowers responsible for interest and other charges listed on the closing statement contrary to § 1635(b), which states that the borrower "is not liable for any finance or other charge." We rejected the creditor's argument, based on *Palmer,* that the court had equitable discretion to alter the statute in this way. In so doing, we distinguished the *Palmer* line of authority on the footing that in those cases, the courts had simply altered TILA's procedures whereas the modification in *Semar* was substantive. *See Semar,* 791 F.2d at 706 n. 15.

Trying to fit within *Semar,* Tampon argues that subsection (d)(4) of Regulation Z is a substantive provision that does not allow for modification of (d)(1)—the subsection that provides for automatic voiding of BNY's security interest upon rescission—because (d)(4) only permits a court to order modification of the procedures set out in subsections (d)(2) and (d)(3). While

it is true that (d)(4) confers discretion to modify (d)(2) and (d)(3), not (d)(1), the argument only goes so far as it begs the question of when a transaction is "rescinded." For Tampon to prevail, rescission must be accomplished automatically upon her decision to rescind, communicated by a notice of rescission, without regard to whether the law permits her to rescind on the grounds asserted. We believe this makes no sense when, as here, the lender contests the ground upon which the borrower rescinds.

■ If BNY had acquiesced in Tampon's notice of rescission, then the transaction would have been rescinded automatically, thereby causing the security interest to become void and triggering the sequence of events laid out in subsections (d)(2) and (d)(3). But here, BNY contested the notice and produced evidence sufficient to create a triable issue of fact about compliance with TILA's disclosure requirements. In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any. Rather, under the statute and the regulation, the security interest "becomes void" only when the consumer "rescinds" the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor.

The First Circuit held as much in *Large v. Conseco Finance Servicing Corporation,* 292 F.3d 49, 54–55 (1st Cir.2002). The Larges made an argument similar to Tampon's, that their letter of rescission had the automatic and immediate effect of voiding a loan transaction. *Id.* at 54. The court observed that "[n]either the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract." *Id.* Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made, the [borrowers] have only advanced a claim seeking rescission." *Id.* at 54–55. *Cf. Williams,* 968 F.2d at 1141–42 (noting that rescission is automatic but rejecting the argument that § 226.23(d)(4)'s lack of reference to subsection (d)(1) restricts a court's ability to impose conditions that run with the voiding of a creditor's security interest upon terms that are equitable); *see also Quenzer v. Advanta Mortgage Corp. USA,* 288 B.R. 884, 888 (D.Kan.2003) ("within the meaning of [TILA], 'rescission' does not mean an annulment that is definitively accomplished by unilateral pronouncement, but rather a remedy that restores the *status quo ante.*") (citing *Ray v. Citifinancial, Inc.,* 228 F.Supp.2d 664 (D.Md.2002)).[5] We are persuaded by this reasoning.

---

**5.** Other courts have also held that rescission may be conditioned on the borrower's repayment of loan proceeds. *See, e.g., FDIC v. Hughes Dev. Co.,* 938 F.2d 889, 890 (8th Cir. 1991) (district court did not err in conditioning rescission on tender of $100,000 principal within one year); *Williams,* 968 F.2d at 1141–42 (voiding of creditor's security interest in home may be conditioned on consumer's tender of amount owed to creditor after subtract-ing all finance charges and penalties); *Bustamante v. First Fed. Sav. & Loan Ass'n,* 619 F.2d 360, 365 (5th Cir.1980) (creditor's TILA obligations were not automatically triggered until obligor tendered repayment); *In re Wepsic,* 231 B.R. 768, 776 (Bankr.S.D.Cal.1998) (conditioning "the benefits of rescission" on the borrower's tender of "her duty of repayment under the statute").

Thus, a court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations. Our precedent is consistent with the statutory and regulatory regime of leaving courts free to exercise equitable discretion to modify rescission procedures. This also comports with congressional intent that "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act." S. Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 236, 265.

As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures *after* deciding that rescission is warranted, may not do so *before* deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

Whether the call is correct must be determined on a case-by-case basis, in light of the record adduced. Here, for example, at oral argument Tampon pressed upon us the possibility that borrowers could refinance or sell the property between the time a court grants rescission and when pay back is required, yet to do so they must have an order in hand. We express no opinion on this, for there is nothing at all to this effect in the record. We simply decide that in the circumstances of this case, the court did not lack discretion to modify the sequence of rescission events to assure that Tampon could repay the loan proceeds before going through the empty (and expensive) exercise of a trial on the merits.

AFFIRMED.