JOURNAL ENTRY AND OPINION
{¶ 1} On January 2, 2001, EquiCredit Corporation of Ohio, n/k/a EquiCredit Corporation of America ("EquiCredit"), loaned appellant, Bernice Jordan, an elderly widow, $85,000 to refinance her home of 25 years at 4262 East 160th Street in Cleveland, Ohio. Jordan signed an adjustable rate note and granted EquiCredit an *Page 3 
open-end mortgage to secure the note. EquiCredit subsequently assigned the note and mortgage to appellee Bank of New York (the "Bank").
 {¶ 2} Pursuant to the note, commencing on March 1, 2001, Jordan was required to make monthly payments of $649.97, to be received by the lender on or before the 1st of every month. The note also permitted a ten-day grace period.
 {¶ 3} Appellee Fairbanks Capital Corporation, n/k/a Select Portfolio Servicing, Inc. ("Fairbanks"), acted as the loan servicing contractor for the note and mortgage.
 {¶ 4} On May 21, 2003, the Bank filed a complaint in foreclosure alleging that Jordan was in default of payment on the note as of December 1, 2002. The Bank sought judgment on the outstanding balance of the note, as well as foreclosure of the mortgage.
 {¶ 5} In her amended answer to the complaint, Jordan denied that she was in default. She also asserted various counterclaims against the Bank and named the Bank, Fairbanks, EquiCredit, and Delta Funding Corporation as third-party defendants.[1]
 {¶ 6} In her counterclaims against the Bank, Jordan alleged that the Bank had violated the federal Home Ownership and Equity Protection Act, because the total points and fees associated with the loan exceeded 8% of the total loan amount, and *Page 4 
the federal Truth in Lending Act ("TILA"), by failing to deliver all material disclosures required by TILA to her.
 {¶ 7} In her third-party complaint, Jordan asserted claims against EquiCredit and Delta Funding which are not at issue in this appeal. See fn.1. With respect to Fairbanks, Jordan claimed that it had violated the federal Real Estate Settlement Procedures Act by failing to provide her with information about her account after her written request for same and the federal Fair Debt Collection Practices Act because, despite Jordan's representation by counsel, Fairbanks had repeatedly written her, visited her home, and called her directly, while attempting to collect the debt. Jordan further alleged negligence and negligent misrepresentation by Fairbanks in its maintenance of documentation regarding her loan and payments. Finally, Jordan alleged that the Bank, EquiCredit, Delta Funding, and Fairbanks had engaged in a civil conspiracy with respect to her loan.
 {¶ 8} Subsequently, on January 3, 2005, in response to the Bank's motion to dismiss Jordan's counterclaims against it for her failure to comply with the trial court's order compelling her responses to the Bank's discovery requests, the trial court ruled that Jordan's counterclaims would be dismissed unless Jordan complied with the court's order within ten days. On March 9, 2005, after Jordan failed to timely comply, the court entered an order dismissing her counterclaims. The trial court subsequently granted the Bank's and Fairbanks' motions for summary judgment. Jordan appeals and raises four assignments of error for our review. In *Page 5 
her first and second assignments of error, Jordan challenges the trial court's granting of summary judgment to the Bank; in her third and fourth assignments of error, Jordan challenges the trial court's granting of summary judgment to Fairbanks.
 {¶ 9} Civ.R. 56(C) provides that summary judgment is appropriate when: 1) there is no genuine issue of material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club Inc. (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327. We review the trial court's judgment de novo using the same standard that the trial court applies under Civ.R. 56(C). Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
1. Fairbanks' motion for summary judgment {¶ 10} Fairbanks is in the business of servicing residential mortgage loans. Faced with numerous class actions challenging its mortgage loan servicing practices, as well as a government investigation of those practices, in 2003, Fairbanks entered into a $40 million nationwide global settlement in Curry v. Fairbanks Capital Corp., No. 03-CV-10895-DPW (D. Mass.), wherein the plaintiffs had filed a consolidated class action complaint alleging improper or illegal conduct by Fairbanks in a wide variety of loan servicing areas. The final order certifying the *Page 6 
settlement class and approving the settlement was entered on May 12, 2004 in the United States district court in Massachusetts. The order certified the settlement class as:
 {¶ 11} "[A]ll persons, other than the Excluded Persons, whose loans were serviced by Fairbanks during the period from January 1, 1999 to December 10, 2003, inclusive, and:
 {¶ 12} "(a) whose loans were (i) in Default or treated as being in Default by Fairbanks and (A) who incurrred or were assessed late fees and/or Default-Related fees including, without limitation, fees denominated by Fairbanks as "corporate advances," or (B) who were affected by Default-Related conduct; and/or (ii) ones in which the Member incurred or was assessed prepayment penalties in Massachusetts, Alabama or West Virginia or in violation of law or contract; or
 {¶ 13} "(b) who otherwise were affected, or whose loans were otherwise affected, by one of the Covered Practices." (Emphasis in original.)
 {¶ 14} The order further specified that "Settlement Class Members" included "all class members who have not timely and validly opted out or excluded themselves from the Settlement * * *." Thus, as certified, the class included Jordan, unless she opted out.
 {¶ 15} Fairbanks filed its first motion for summary judgment on October 6, 2004. In this motion, Fairbanks argued that Jordan had failed to opt out of the Curry class action and was therefore barred by the settlement agreement and release from *Page 7 
pursuing a separate action against Fairbanks by way of her third-party complaint. Fairbanks' motion was supported by the affidavit of Joy Brodowsky-Lines, Document Control Officer of Select Portfolio Servicing Inc., f/k/a Fairbanks. Brodowsky-Lines averred in her affidavit that Jordan's name was not among the official list of those who had opted out of the Curry class action.
 {¶ 16} Jordan filed a brief opposing Fairbanks' motion. Her affidavit, which was attached to her brief, averred that she had mailed a notice of her intent to opt out of the Curry class action to the claims administrator of the action. Jordan attached copies of her letter to the administrator and a certificate of mailing from the U.S. Postal Service postmarked March 26, 2004.
 {¶ 17} The trial court subsequently denied Fairbanks' motion for summary judgment, ruling that "an issue of fact remains as to whether defendant Bernice Jordan was part of the class action case."
 {¶ 18} On March 16, 2005, Fairbanks served requests for 18 admissions upon Jordan in this action, which included the following requests:
 {¶ 19} "15. Admit that you did not opt out of participation in the Fairbanks class action settlement.
 {¶ 20} "16. Admit that the letter containing your Notice of Exclusion from the class action settlement involving Third Party Defendant was not mailed by first class mail postage prepaid to the Claim Administration Center prior to the April 9, 2004 cut-off date. *Page 8 
 {¶ 21} "17. Admit that the letter containing your Notice of Exclusion from the class action settlement involving Third Party Defendant was mailed to the incorrect address for the Claims Administration Center at P.O. Box 80811, Petaluma, CA 94975-8011.
 {¶ 22} "18. Admit that the letter containing your Notice of Exclusion from the class action settlement involving Third Party Defendant was returned to your attorney's office due to an incorrect mailing address after March 26, 2004."
 {¶ 23} The requests specified that, pursuant to Civ.R. 36, they were to be answered within 28 days. The requests further specified that "[e]ach Request for Admission shall be deemed admitted unless within twenty-eight (28) days from the date of service, defendant serves upon third Party Defendant Fairbanks Capital Corp. her written answer or objection addressed to each matter."
 {¶ 24} On July 15, 2005, Fairbanks filed a second motion for summary judgment. In this motion, Fairbanks argued that Jordan had not served responses to the requests for admissions, objected to them, or sought an extension of time from the court in which to respond to them. Accordingly, Fairbanks argued that, pursuant to Civ.R. 36, Jordan was deemed to have admitted all of the requests, including that she had not opted out of the Curry class action. Fairbanks argued further that under the terms of the Settlement Agreement and Release in the Curry class action, a copy of which was attached to Fairbanks' motion, all persons not excluded from the class action are deemed to have "released completely and forever discharged Fairbanks." *Page 9 
Therefore, Fairbanks argued, by virtue of the settlement in the class action, Jordan had settled and released all of her claims against Fairbanks and, thus, it was entitled to summary judgment on Jordan's third-party complaint against it.
 {¶ 25} On March 15, 2006, the trial court ordered the magistrate to "provide court with all outstanding motions in this case, including thepending motion for summary judgment * * *." The trial court further notified the parties that "any response to the MSJ is due on or before 3/20/06" and that no extensions or reply briefs were permitted.
 {¶ 26} Subsequently, Jordan filed a brief opposing the Bank's pending motion for summary judgment, but did not file a brief opposing Fairbanks' second motion for summary judgment. On July 26, 2006, the trial court granted the Bank's and Fairbanks' motions for summary judgment. The trial court's judgment granting Fairbanks' second motion for summary judgment was in error because Jordan had no notice that Fairbanks' motion was pending.
 {¶ 27} The docket indicates that on March 10, 2006 — after a status conference by the trial court and six days before the trial court ordered the parties that any response to the pending motion for summary judgment was due by March 20, 2006-the trial court determined that Fairbanks' second summary judgment was moot.
 {¶ 28} An entry on the trial court's docket constitutes notice of a decision. Hershbain v. Cleveland (June 4, 1992), Cuyahoga App. Nos. 60631 61121, citing *Page 10 Reis Flooring Co. v. Dileno Constr. Co. (1977), 53 Ohio App.2d 255. Moreover, notice of a court's decision "shall be deemed to have been provided once the clerk has served notice of the entry and made the appropriate notation on the docket." Atkinson v. Grumman Ohio Corp.
(1988), 37 Ohio St.3d 80, syllabus. Likewise, parties are expected to keep themselves informed of the progress of their case by checking the docket. Johnson v. Meridia Euclid Hosp., Cuyahoga App. No. 80072, 2002-Ohio-1402, citing Hershbain, supra.
 {¶ 29} Here, the notice provided by the docket was that the court had already determined that the motion was moot in light of its earlier ruling denying Fairbanks' motion. Moreover, the trial court's entry of March 15, 2006 clearly stated that there was one pending motion (presumably the Bank's). Because the docket indicated that Fairbanks' motion was moot, Jordan determined that she was under no obligation to respond to Fairbanks' motion by March 20, 2006. Accordingly, we remand to allow Jordan an opportunity to respond to Fairbanks' motion.
 {¶ 30} In its second motion for summary judgment, Fairbanks argued that by virtue of her failure to respond to its requests for admissions, Jordan had admitted that she had not opted out of the class action settlement and was therefore bound by the settlement's release of claims against Fairbanks.
 {¶ 31} The record, however, reflects that on June 3, 2005, well before Fairbanks filed its second motion for summary judgment, Jordan, in fact, filed a notice of her response to Fairbanks' requests for admissions, as well as her *Page 11 
response to its request for production of documents and interrogatories. A copy of the completed requests for admissions, along with a certificate of mailing of same on June 3, 2005 by the U.S. Postal Service, was filed on August 15, 2005 as an attachment to Jordan's response to Fairbanks' motion for default judgment and sanctions.
 {¶ 32} Thus, we find Fairbanks' assertion in its second motion for summary judgment, filed on July 15, 2005, over a month after Jordan served her responses, that "[d]efendant Jordan has never served responses to the Requests"
 {¶ 33} to be a misrepresentation to the court.[2]
 {¶ 34} We recognize that Jordan's response to Fairbanks' requests for admissions was untimely. It is well settled that "[u]nder Civ.R. 36(A) and (B), the matter set forth in the requests for admissions is deemed admitted if they are not answered within rule, and said admitted matter is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission." Beechwoods, Inc. v.Hosfelt (Oct. 9, 1979), Franklin App. No. 79AP-117. It is also settled law that a motion for summary judgment may be based on such admitted matter. Klesch v. Reid (1994), 95 Ohio App.3d 664, 674. "[W]here a party files a written request for admission, a failure of the opposing party to timely answer the request constitutes a conclusive admission pursuant to Civ.R. 56(C) in case of a *Page 12 
summary judgment." Id., citing T S Lumber Co. v. Alta Constr. Co.
(1984), 19 Ohio App.3d 241.
 {¶ 35} Nevertheless, the court, on motion, may permit withdrawal or amendment of the admissions when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining his action or defense on the merits. Civ.R. 36(B). "[M]erely contesting the admissions in a [response to a] motion for summary judgment meets the requirements of Civ.R. 36(B)."Jade Sterling Steel Co. v. Stacey, Cuyahoga App. No. 88283,2007-Ohio-532, atT|12, citing Balson v. Dodds (1980), 62 Ohio St.2d 287,291.
 {¶ 36} Thus, if she had notice that Fairbanks' motion was still pending, Jordan could have filed a response in which she contested the truth of the Civ.R. 36(A) admissions for purposes of summary judgment. The trial court could have, within its discretion, interpreted such a response as a motion to withdraw or amend the admissions and permitted same. Jade Sterling Steel Co., supra at ¶ 13.
 {¶ 37} Accordingly, we reverse the trial court's grant of summary judgment in favor of Fairbanks and remand so Jordan has an opportunity to respond to Fairbanks' motion for summary judgment.
 {¶ 38} Appellants' third and fourth assignments of error are sustained. 2. The Bank's motion for summary judgment *Page 13 
 {¶ 39} In its motion for summary judgment, filed on April 29, 2005, the Bank argued that there was no material dispute that Jordan had defaulted on her mortgage loan. Attached to the Bank's motion was the affidavit of Brodowsky-Lines, who averred that she had reviewed Jordan's account and the account was in default. Specifically, Brodowsky-Lines averred that Jordan's account was due for payment on January 1, 2003 and she had failed to make this or any subsequent payments, so the Bank had elected to accelerate the entire balance due on the loan, i.e., $83,764.19, plus interest at 8.44% per annum from January 1, 2003, and assorted costs.
 {¶ 40} In her brief in opposition to the Bank's motion, Jordan argued that her mortgage payments were current when the Bank filed its complaint in foreclosure on May 21, 2003. Attached to her response were copies of 18 checks in the amount of $649.97, two checks in the amount of $649.96, five checks in the amount of $249.97, and one duplicate carbon copy of a check in the amount of $249.97, all drawn on Jordan's National City Bank account made payable to EquiCredit or Fairbanks and dated from February 26, 2001 to April 31, 2003. Also attached to Jordan's response was a printed report from an unidentified source indicating that six checks in the amount of $385 had been issued during this time period for Jordan for "shelter-temporary." In her affidavit, which was attached to her response, Jordan averred that the checks were copies of cancelled checks that she had sent to EquiCredit and Fairbanks as payment on her mortgage. She further averred that *Page 14 
she had periodically sought assistance from the Cuyahoga County Veterans Services Commission in making her mortgage payments and, when the Commission issued her a voucher in the amount of $385, she would include the voucher from the Commission with her payment. Also attached to Jordan's response was a copy of a letter from Fairbanks dated May 9, 2003, indicating that it was returning check number 2039 in the amount of $649.96 because her account was in default status.
In her response brief, Jordan argued that, as evidenced by the cancelled checks and vouchers attached to her response, she had sent $16,893.23 to EquiCredit/Fairbanks and her account was not in default when this action was filed.
 {¶ 41} Jordan argued further that the Bank did not have an enforceable security interest in her property because she had notified EquiCredit and Fairbanks on two separate occasions that she was exercising her extended right to rescind for violation of the TILA.
 {¶ 42} In February 2006, the Bank filed a supplemental memorandum in support of its motion for summary judgment. The Bank argued that Jordan's affidavit did not create a material issue of genuine fact precluding summary judgment because, even if believed, it only demonstrated that Jordan mailed payments and vouchers to EquiCredit but "evidence of mailing does not establish payment." The Bank argued that the affidavit of Philip Pay demonstrated that EquiCredit did not receive timely monthly payments as required by the note. It argued further that the affidavit of Mary Reiland demonstrated that Jordan's check *Page 15 
number 1965, reflecting the January 2003 payment, did not clear her National City Bank checking account. Our review of the record, however, indicates that neither Pay's nor Reiland's affidavit were attached to the Bank's supplemental memorandum nor ever filed with the trial court. Thus, although both affidavits were submitted by the Bank as an attachment to its brief on appeal, we cannot consider them.
 {¶ 43} In her brief in opposition, Jordan reiterated the same arguments she had made earlier.
 {¶ 44} On April 24, 2006, after a status conference by the trial court, the Bank submitted a "memorandum regarding rescission," to refute Jordan's assertion at the conference that her rescission of the loan transaction "somehow allows her to avoid summary judgment."
 {¶ 45} Jordan now appeals the trial court's granting summary judgment to the Bank. In her first assignment of error, she argues that the trial court erred in granting summary judgment to the Bank because the copies of her cancelled checks, the voucher numbers and her affidavit were evidence of payment sufficient to create a genuine issue of material fact regarding whether her account was in default.
 {¶ 46} The Bank, on the other hand, argues that payment is an affirmative defense which Jordan waived by failing to assert in her answer. Ironically, the Bank did not raise this argument below and is therefore precluded from raising it now. A party who fails to raise an argument in the court below waives his or her right to raise *Page 16 
it on appeal. State ex rel. Zollner v. Indus. Comm. of Ohio (1993),66 Ohio St.3d 276, 278.
 {¶ 47} The Bank next argues that Jordan failed to meet her burden of establishing payment. The Bank cites Loudakis v. Loudakis (May 10, 1993), Greene App. No. 92-CA-30, wherein the court stated:
 {¶ 48} "Once evidence of an obligation is established, the burden is upon the defendant to prove any payments. This follows from the fact that payment is an affirmative defense to an action on a debt, and is consistent with the general principle that the burden of proof should be upon that party who is in the best position to come forward with evidence. See Ginn v. Dolan (1909), 91 O.S. 121, 129.
 {¶ 49} "It can be expected that a payor will retain receipts, cancelled checks, or other satisfactory proof of payment. The payor is in the best position to prove the payments he has made. An alleged payee is at a comparative disadvantage in attempting to prove a negative-that an alleged payment or payments were not made."
 {¶ 50} In reliance on Loudakis, the Bank argues that, although Jordan may have made some of the required payments, she failed to provide "tangible evidence of actual payment" of all of the payments, and, therefore, it was entitled to summary judgment in its favor. We disagree. *Page 17 
 {¶ 51} The complaint asserted that Jordan's account was in default as of December 1, 2002. Added together, the checks and vouchers submitted by Jordan from March 1, 2001 through December 3, 2002, constitute the total amount due on the loan for 22 months, the amount of time between when Jordan's first payment was due on the loan and December 1, 2002, when the action was allegedly in default. Jordan's affidavit asserted that the payments were made to the Bank and that the checks are copies of her cancelled checks, which indicates that payment was received by the Bank. Moreover, the Bank conceded that Jordan periodically made payments on her account with checks issued pursuant to a voucher system administered by the Cuyahoga County Veterans Service Commission. Accordingly, Jordan's affidavit, the checks and the vouchers are sufficient to establish a genuine issue of material fact regarding whether her account was in default when this action was filed.
 {¶ 52} The Bank argues that there is no evidence that Jordan made the January 2003 payment because she submitted a copy of the duplicate carbon copy of the check, not a copy of the check itself. Moreover, it contends that Reiland's affidavit establishes that this check did not clear Jordan's bank account. There is no evidence in the record to support the Bank's argument that Jordan did not make the January 2003 payment, however, because we cannot consider Reiland's affidavit. Furthermore, when this action was filed in May 2003, the Bank asserted that Jordan's account was in default as of December 2002. Accordingly, we fail to see *Page 18 
the significance of the Bank's argument that Jordan did not make the January 2003 payment.
 {¶ 53} Moreover, in this time of widespread predatory and abusive lending practices, e.g., the Curry class action settlement discussed earlier, we are loathe to place the burden of proving payment totally on the borrower. Indeed, the affidavit of Philip Pay, although not considered in reaching our result, supports our hesitation. In his affidavit, Pay states that in February 2002, May 2002, and April 2003, the Bank received checks from Jordan which it did not post. Under such circumstances, where the borrower is attempting to pay but the lender is refusing to accept payment, it is disingenuous for the lender to then assert that the borrower cannot prove that she made all of the required payments.
 {¶ 54} Finally, Jordan need not, as the Bank seems to suggest,prove her case in summary judgment. She need only demonstrate that genuine issues of material fact exist. Severance v. Pointer (Sept. 29, 1988), Franklin App. No. 87AP-1118. Her affidavit and accompanying exhibits are sufficient to create a genuine issue of material fact regarding the status of her account when this action was filed.
 {¶ 55} In her second assignment of error, Jordan contends that the trial court erred in granting summary judgment to the Bank because she twice exercised her statutory right to rescind the transaction because of the lender's failure to provide her with a notice of her right to cancel and other required material disclosures required by TILA. *Page 19 
 {¶ 56} Under the Truth in Lending Act, 82 Stat. 146, 15 U.S.C. § 1601
et seq., when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan transaction entirely if the lender fails to deliver certain forms or disclose important terms accurately. See 15 U.S.C. § 1635. This right of rescission expires three years after the loan closes or upon the sale of the secured property, which ever date is earlier. A borrower who exercises his right to rescind "is not liable for any finance or other charge, and any security interest given by [him], including any such interest arising by operation of law, becomes void" upon rescission. § 1635(b). Failure to satisfy the Act subjects a lender to criminal penalties for noncompliance, see § 1611, as well as to statutory and actual damages traceable to a lender's failure to make the requisite discloses. See § 1640.
 {¶ 57} In her affidavit attached to her brief in opposition to the Bank's motion for summary judgment, Jordan averred that on two separate occasions, she had exercised her right to rescission and, therefore, the Bank's security interest in her home was void.
 {¶ 58} We first address the Bank's argument that Jordan cannot argue rescission, because the trial court dismissed her counterclaims, which included a claim for damages under § 1640, as a sanction for her failure to comply with its discovery order. We note that although Jordan's counterclaims were dismissed, she *Page 20 
also asserted rescission as an affirmative defense. Those defenses remain valid even after the dismissal of her counterclaims. Accordingly, although Jordan is precluded from pursuing any claim for damages based upon her right to rescind, she is entitled to assert rescission as an affirmative defense to the Bank's foreclosure action.
 {¶ 59} The Bank next claims that "there is no factual or legal basis" for Jordan's claim of rescission. It argues that its security interest is not automatically void upon Jordan's notice of rescission because either it or the court must first determine that Jordan has a right to rescind.
 {¶ 60} We agree that a borrower's notice of intent to rescind his loan transaction does not in and of itself automatically void the transaction. Rather, a rescission occurs under § 1635 either when the creditor acknowledges the consumer's right to rescind or, in a contested case, such as this, when a court determines that the consumer is entitled to rescission. Yamamoto v. Bank of New York (C.A.9, 2003), 329 F.3d 1167.
 {¶ 61} Significantly, in this case, the Bank does not dispute Jordan's assertion that she twice rescinded the transaction; it disputes whether there is a factual basis, i.e., TILA violations, for her rescission. Jordan asserts there is; the Bank contends there is not. Clearly, there is an issue of fact regarding whether Jordan had the right to rescind to be resolved. *Page 21 
 {¶ 62} The Bank also argues that Jordan has not demonstrated that she can tender the loan proceeds if she prevails on her rescission claim and, therefore, she is not entitled to rescind. The Bank contends, in reliance on Yamamoto, that rescission requires a showing that the borrower can meet her TILA rescission obligations, and repay amounts advanced by the lender, before going through a trial on the merits.
 {¶ 63} The Ninth Circuit explained TILA rescission procedures inYamamoto: "TILA was enacted in 1968 `to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.' 15 U.S.C. § 1601(a). If required disclosures are not made, the consumer may rescind. See 15 U.S.C. § 1635(a). Section 1635(b) governs the return of money or property when a borrower exercises the right to rescind. It provides that the borrower is not liable for any finance or other charge, and that any security interest becomes void upon such a rescission. The statute adopts a sequence of rescission and tender that must be followed unless the court orders otherwise: within twenty days of receiving a notice of rescission, the creditor is to return any money or property and reflect termination of the security interest; when the creditor has met these obligations, the borrower is to tender the property." Yamamoto, supra at 1170.
 {¶ 64} As noted in Yamamoto, a provision permitting a court to modify rescission procedures was added in 1980 as part of the Truth in Lending *Page 22 
Simplification and Reform Act, Pub.L. No. 96-221, Tit. VI, § 612(a)(4),94 Stat. 168, 175 (1980) (codified as amended at 15 U.S.C. 1635(b) (1988)). Accordingly, it is now recognized that in applying TILA, "`a trial judge has the discretion to condition rescission on tender by the borrower of the property he had received from the lender.'"Yamamoto, at 1171, quoting Ljepava v. M.L.S.C. Props., Inc. (C.A.9, 1975) 511 F.2d. 935, 944. "Whether a decree of rescission should be conditional depends upon "`the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act.'" Yamamoto, supra at 1171, quoting Palmer v. Wilson (C.A.9, 1974), 502 F.2d 860, 862.
 {¶ 65} Thus, contrary to the Bank's argument, rescission does notrequire that the borrower demonstrate, prior to trial, that she could tender the loan proceeds if she prevailed on her claim for rescission. Rather, a court may, in the exercise of its equitable discretion, and upon consideration of the circumstances, alter the sequence of procedures for rescission and order the borrower to demonstrate, prior to trial, that she can comply with her rescission obligations once the creditor has performed its obligations. Yamamoto, supra at 1173.
 {¶ 66} In this case, the court issued no order modifying the normal rescission sequence and conditioning rescission upon tender by Jordan. Accordingly, contrary to the Bank's argument, there was no requirement that Jordan document her ability *Page 23 
to tender the proceeds to the Bank should her rescission claim succeed and, thus, Jordan's failure to do so does not bar her rescission claim.
 {¶ 67} Because there are issues of fact regarding the status of Jordan's account when this action was filed and whether grounds for rescission exist, the trial court erred in granting the Bank's motion for summary judgment.
 {¶ 68} Appellant's first and second assignments of error are sustained.
Reversed and remanded.
It is ordered that appellant recover from appellees costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, JUDGE
MARY EILEEN KILBANE, P.J., and MELODY J. STEWART, J., CONCUR
[1] EquiCredit was never served and Jordan does not appeal the trial court's subsequent dismissal of her claims against Delta Funding.
[2] In its brief on appeal, Fairbanks more accurately asserts that Jordan failed to "timely respond" to its requests for admissions. *Page 1